## Rhea Thielens Implement Co. v. The Racine Malleable & Wrought Iron Co.

89    463
e104   261
e104   263

1. VENDOR AND VENDEE—*Measure of Damages for Breach of Contract.*—Where one orders a certain number of machines made and delivered to him at a stipulated price, and afterward and before delivery takes orders to resell at an advanced price, and some of the machines when delivered are found defective and are returned and are received back by the vendor and the vendee credited with the contract price, the measure of damages to the vendee for the breach of the contract is the excess, if any, of the market price at the time and place of delivery of such machines, if not defective, over the contract price.

2.  MEASURE OF DAMAGES—*Where Loss of Profits is Not.*—In such case the loss of profits on the resale is not the measure of damages unless the vendor knew when the contract was made that the vendee had an existing contract for resale at an advanced price, or knew that the vendee was giving the order for the purpose of taking orders for resales in advance of delivery to the vendee.

Assumpsit.—Appeal from the Circuit Court of Peoria County; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1900. Affirmed. Opinion filed June 8, 1900.

ARTHUR KEITHLEY, attorney for appellant.

Unliquidated damages arising out of the contract or cause of action sued on are a proper subject of set-off. Nichols v. Ruckells, 3 Scam. 298; Sargeant v. Kellogg, 5 Gil. 273; Hartshorn v. Kinsman, 16 Ill. App. 555; Scudder-Gale Grocer Co. v. Russell, 65 Ill. App. 281.

A manufacturer impliedly warrants that the goods manufactured and sold by him are well and properly constructed of good material, and are well adapted for the purpose for which they are made and sold.    Huyett Mfg. Co. v. Saile, 45 Ill. App. 562; White v. Gresham & Mann, 52 Ill. App. 399.

The person injured by breach of warranty of such a nature as would justify a return, can not be compelled to elect between a return and damages, but may be entitled to both.    The purchase price may not make good all his losses, and the retention of property which is unfit for use may be onerous and ruinous.    Kimball Mfg. Co. v. Vroman, 35 Mich. 310. Clarke v. McGetchie, 49 Ia. 437.

Profits of a business lost by reason of a breach of contract are a proper measure of recovery in an action for damages for such breach.    Hill v. Parsons, 110 Ill. 111; Chicago City Ry. Co. v. Howison, 86 Ill. 215; Van Arsdale v. Rundel, 82 Ill. 63; Chapman v. Kirby, 49 Ill. 213; Priestly v. R. R. Co., 26 Ill. 205.

COVEY & COVEY, attorneys for appellee.

The measure of damages in the case of a breach of warranty of quality, is the difference between the value of the

goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty.

The contract price affords *prima facie*, not conclusive, evidence of the value of the goods if they had been as warranted.

But the application of the rule is not modified by the fact that the buyer has resold the goods for the same or even greater price than that which he paid for them. R. M. Benjamin on Sales, 225–6; Wheelock v. Berkely, 138 Ill. 153; Wynn v. Longley, 31 Ill. App. 616.

The general rule is that the purchaser is entitled to recover the difference between the contract price and the value of the article in the market at the time and place of delivery. This rule, however, is changed, where the vendor knows that the purchaser has an existing contract for a resale at an advanced price, and that the purchase is made to fulfill such contract, and the vendor agrees to supply such article to enable him to fulfill the same, because those profits which would accrue to the purchaser upon fulfilling the contract of resale may justly be said to have entered into the contemplation of the parties in making the contract.

Where the vendee is buying the grain for the special purpose of fulfilling a contract of resale in Philadelphia, that fact should have been communicated to the vendor before it could be made the foundation of special damages against him. Carpenter v. First Nat. Bank, 119 Ill. 361; Thorne v. McVeagh, 75 Ill. 81; Glidden v. Pooler, 50 Ill. App. 36; Rahm v. Dieg, 121 Ind. 287–8.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a suit by appellee against appellant to recover the price of certain seeders sold and delivered by appellee to appellant. The proof showed that under the contract there was $102 due therefor, and the court instructed the jury to return a verdict for plaintiff for that sum. This was done, and judgment was rendered accordingly, and

defendant appeals. The verdict was correct, unless the court below erred in refusing to admit certain evidence offered by defendant to establish recoupment or set-off.

Plaintiff was a manufacturer of seeders and received and filled an order from defendant, a jobber in farm machinery, for a certain number of seeders made according to defendant's directions, at the agreed price of $6 each. Certain seeders shipped under the contract proved to be defective, and were returned to and received by plaintiff, and plaintiff credited defendant with $6 for each machine so returned. Defendant sought to show that after it gave plaintiff the order for the seeders it in turn took orders for them from various retail dealers at $8 each, and that defendant lost a profit of $2 it would have made upon each seeder so returned if it had not been defective, and that when it discovered the defects in the seeders in question it was too late to supply the trade with others for that season; and defendant sought to recoup or set off the profits so lost against the sum it otherwise owed plaintiff for other seeders. The court below held that to make the proof competent defendant must further show that the machines were bought by defendant to fill orders already taken, and that plaintiff, when making its contract with defendant, knew that fact. Defendant admitted it could not make such proof, because it bought the machines from plaintiff before it took orders for them from retail dealers. The court then refused to admit the evidence.

The principles governing such contracts are thus stated in Carpenter v. First Nat. Bank, 119 Ill. 352:

"The general rule is that the purchaser is entitled to recover the difference between the contract price and the value of the article in the market at the time and place of delivery. (Messmore v. Lead Co., 40 N. Y. 427.) 'This rule, however, is changed, where the vendor knows that the purchaser has an existing contract for a resale at an advanced price, and that the purchase is made to fulfill such contract, and the vendor agrees to supply the article to enable him to fulfill the same, because these profits which would accrue to the purchaser upon fulfilling the contract of resale, may justly be said to have entered into the con-

Rhea Thielens Implement Co. v. Racine Iron Co.

templation of the parties in making the contract.' If appellants were buying the grain for the special purpose of fulfilling a contract of resale in Philadelphia, that fact should have been communicated to Woodruff & Jones (the real owners of the note sued on in the name of the bank) before it could be made the foundation of special damages against them."

Baron Alderson thus states the rights of the parties in such case in Hadley v. Baxendale, 9 Exch. 341; 26 E. L. & E. 398:

" Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them.

In Cockburn v. Ashland Lumber Co., 54 Wis. 619, in applying these rules the court said:

" To bind the defendant by the price stipulated for a resale, he must have had notice of such a resale when the contract was made, though, perhaps, not of the contract price. In the absence of such notice it can not be fairly said that the special damages which the plaintiffs suffered,

by reason of their inability to fulfill their contract with the Quebec parties, may reasonably be supposed to have been within the contemplation of both the parties at the time they made the contract upon which the present action is based. The complaint only alleged a notice given several months after such contract was made. It therefore failed to state facts to entitle plaintiffs to recover.the special damages resulting from the loss of their contract with the Quebec parties."

In Wetmore v. Pattison, 45 Mich. 439, the court said:

" The plaintiffs, after having made their contract with the defendant, were at liberty, no doubt, to embark in such enterprises as they thought proper on the strength of it. It was a question of business prudence how far it would be wise or safe to rely on the agreement with defendant. But they were not empowered to enter into such scheme or arrangement as they might choose, in reliance on his contract, and make him responsible in the event of his failure for whatever losses might happen through such secondary operations." Rahm v. Deig, 121 Ind. 283.

In 2 Greenleaf on Evidence, Sec. 255, note, it is said, if the profits " are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract." Glidden v. Pooler, 50 Ill. App. 36.

Here the purchaser returned the defective machines, and was credited with the contract price. Plaintiff did not sell them to enable defendant to fill orders already received, for defendant had no such orders at that time. It is not shown that when the contract was made plaintiff knew defendant intended to make resales or take orders for the goods before they were delivered. Under the rules above laid down, if defendant had received the machines, discovered their defects, returned them, and been credited with their contract price, before it undertook to sell them to others, it would have been entitled to no damages unless such machines at the time and place of delivery were worth more than it had agreed to pay for them, in which case that difference

would have been the measure of its damages.   We can not see that a different rule should apply where, instead of waiting to get its goods before it sold them again, it saw fit to take orders for them in advance.   Defendant exercised its own judgment as to the manner in which it should conduct its business relating to the sale of its seeders, and plaintiff had no connection therewith.   There was no proof that at the time and place of delivery the seeders, if perfect, were worth more than the contract price.   The presumption, therefore, is that the contract price was also the market price.   The parties had dealt for some years before the year to which this controversy relates; and in such former dealings the practice had been for defendant to return any seeders which did not work and for plaintiff either to send new seeders in place of the defective ones or to credit defendant with the cost price of those returned.   The judgment is affirmed.