## Sagola Lumber Company v. Chicago Title & Trust Company, et al.

### Gen. No. 11,716.

1. VENDOR—*what essential to establish claim against, for failure to deliver.* Where a contract of sale provides that certain acts are to be performed by the vendee before the vendor is bound to ship and deliver goods purchased, the vendee must show performance of such acts to enable him to recover damages for the failure on the part of the vendor to ship or deliver the goods.

2. MEASURE OF DAMAGES—*for failure to deliver in installments.* Where goods are to be delivered in installments, or as required by the vendee, the true measure of damages, in event of failure to deliver, is the difference between the contract price and the market price or value at the different times when such articles were required or ordered, and it is the difference between the contract price and the market price on the day or at the time of the failure to deliver, and not on some other day or time.

Action for damages for breach of contract, etc. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in the Branch Appellate Court at the March term,

1904. Reversed and remanded. Opinion filed May 16, 1905. Rehearing denied June 23, 1905.

**Statement by the Court.** This suit was commenced by Edward Browne, Robert L. Chapin, William P. Cary and Arthur C. Lombard, co-partners, doing business as Browne-Chapin Lumber Company, against the Sagola Lumber Company. Edward Browne was adjudged a bankrupt, and the Chicago Title & Trust Company, his trustee, was substituted in his place as one of the plaintiffs in the cause. The suit is for damages for breach of two contracts, one for the sale by the Sagola Lumber Co. (then known as the Lang Lumber Company) to appellees of a quantity of lumber and the other was for the sale of a quantity of shingles. The lumber contract provides that the defendant (appellant) agrees to sell to the plaintiffs (appellees) and the latter agrees to purchase all the lumber of the grades therein specified on hand at the defendant's mill at Sagola, Michigan, May 12, 1890, and to be manufactured by appellant from that date to November 30, 1890, at prices fixed for each item, except such portion of the stock as may be required by the Lang Lumber Company's yard at Iron Mountain, Michigan, all of the stock to be dressed and loaded as ordered by plaintiffs, free on board cars, Sagola, Michigan. The shingle contract provides that the defendant sells and the plaintiffs purchase all the extra *A* shingles of proper grade which are manufactured at the mill of the Sagola Lumber Co. from the date of the agreement, May 12, 1890, until November 30, 1890, "which amount it is agreed shall not be less than eight nor more than ten million pieces, also not less than one million of shingles, 5 to 10 inches clear butt, and also what extra No. 1 shingles Browne-Chapin Lumber Company may require to fill their orders in part car load." The above shingles were to be manufactured, commencing immediately after the date of the contract, and to be made and maintained up to the standard agreed upon.

The contract also provides: "The consideration to be paid by the Browne-Chapin Lumber Company is $2.00 per thou-

sand on Extra *A*, $1.25 per thousand on 5-inch clear, and 40 cents per thousand on Extra No. 1, at which prices the said shingles are to be delivered f. o. b. cars at Sagola, branded as directed and loaded on orders and at direction of Browne-Chapin Lumber Company, or their authorized agent or employe."

The plaintiffs in their declaration claim that they failed to get the lumber and shingles which they were entitled to under their contracts.

Plaintiffs introduced evidence tending to show that the defendant shipped to persons other than the plaintiffs lumber of the kinds mentioned in the lumber contract amounting, from the date of the contract, May 12, 1890, to November 30, 1890, to 737,244 feet, and the amount so shipped from November 30, 1890, to February 28, 1891, was 249,762 feet. They also introduced evidence tending to show that after the contract was made prices of the kinds of lumber mentioned therein advanced and that the market price of such lumber during the summer and fall of 1890 was greater than the contract price. There was according to the plaintiff's testimony considerable fluctuation in the market prices during the above period, but it does not appear when the advance commenced or what the market prices were at any particular time or times during the period referred to, or what such market prices were in 1891. This evidence was supplemented by the plaintiffs by evidence of a computation purporting to give the excess of the market price over the contract price of the various grades of lumber shipped to persons other than the plaintiffs. Such excess, according to the computation on lumber shipped between May 12, 1890, and November 30, 1890, amounted to $1,369.29; and on lumber shipped between November 30, 1890, and February 28, 1891, to $428.80. This computation is based in some instances upon the lowest market prices as shown by the testimony and in other instances upon prices in excess of the lowest market prices.

Plaintiffs also offered evidence tending to show shipments of lumber from April 7, 1891, to June 26, 1891, by the de-

Sagola· Lumber Co. v. Chicago Title & Trust Co.

fendant to W. E. Kelley & Co., to the amount of 188,935 feet, and that the difference between the contract price and the invoice prices to Kelley & Co. was $324.33, offering no testimony as to the market price of such lumber in 1891.

As to the shingle contract the plaintiffs' evidence tends to show that the defendant shipped shingles from June, 1890, until late in the year 1890, or to the beginning of 1891; that the price of shingles advanced in 1890; that *A* shingles were worth from $2.00 to $2.25 per thousand, and that 5-inch clear shingles were worth from $1.25 to $1.60 ·per thousand during the fall ·and winter of 1890 and 1891.   The evidence does not disclose what the market price of shingles was at any particular time or times during that period.

Plaintiffs' evidence further tends to show that the total number of *A* shingles shipped by defendant to plaintiffs from May, 1890, to April, 1891, was 2,964,000, and of the standard shingles 1,003,000; and a computation showing the difference between the 9,000,000 shingles called for by the contract and the 3,967,000 received, upon a basis of twenty cents advanced in shingles amounting to $1,006.60, which was claimed as plaintiff's damages on the shingle contract.

In a general way plaintiffs' evidence tends to show that orders for shingles were sent to the defendant by the plaintiffs, which were not filled, but it does not show specific orders for a particular number and kind of shingles desired by the plaintiffs, and where to be shipped, a failure to ship them and the market price of such shingles at the dates of the orders or on the date when they should have been delivered.'

Plaintiffs were allowed to show shipments of shingles made by the defendant to persons other than the plaintiffs during and subsequent to the period covered by the contract, amounting to 613,000, over the objections of defendant.

Defendant's testimony tended to show that a large number of the shipments of lumber made to other persons than the plaintiffs were made upon orders received by the defendant from its Iron Mountain yard, and that deducting those shipments the total amount of lumber shipped to other

persons than the plaintiffs from May. 13, 1890, to January 1, 1891, was 232,000 feet, and the amount so shipped from January 1, 1891, to April 1, 1891, was 158,200 feet. Defendant's evidence also showed that all the lumber shipped from defendant's mill to persons other than the plaintiffs or used by the defendant to meet the requirements of its Iron Mountain yard consisted of lumber rejected by the plaintiffs, or was thick lumber not included in the contract with plaintiffs. It appeared also that a large number of the shingles on hand at Sagola, May 12, 1890, had been sold to other parties at that time, and that a number of the shipments shown in plaintiffs' evidence were of such shingles.

The market price of shingles in large lots, such as called for by the shingle contract, did not vary, according to the testimony for defendant, from May, 1890, to January, 1891, *A* shingles being worth during that time $2.00 per thousand; and the price of lumber of the character mentioned in the lumber contract remained steady during the same period.

The jury returned a verdict for the plaintiffs for $3,250, and judgment was rendered on the verdict.

LAWRENCE P. CONOVER, for appellant.

FRED H. ATWOOD, FRANK B. PEASE, WILLIAM S. CORBIN and CHARLES O. LOUCKS, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

We have given the substance of the evidence offered, not for the purpose of weighing it, but as the basis for the discussion of the questions of law raised on the record. We express no opinion upon the facts.

The lumber contract provides: "All the above stock to be dressed and loaded as ordered by said Browne-Chapin Lumber Company, f. o. b. cars Sagola, Michigan."

The shingle contract after specifying the amount of *A* shingles to be manufactured and the period of time therefor provides: "Also what extra No. 1 shingles Browne-Chapin Lumber Company may require to fill their orders in part

carloads," and then after specifying the prices for the different grades of shingles provides: "At which prices the said shingles are to be delivered f. o. b. cars at Sagola, branded as directed, and loaded on orders and at direction of Browne-Chapin Lumber Company, or their authorized agent or employe."

Thus it appears that appellees (plaintiffs) under the lumber contract must first give directions for the dressing and loading of the lumber before apellant had a right to or could be required to ship it; and under the shingle contract plaintiffs must give orders and directions as to branding and loading before appellant could be required to deliver.

Where a contract of sale provides that certain acts are to be performed by the buyer before the seller is bound to ship or deliver the goods purchased, the buyer must show performance of such acts to enable him to recover damages for a failure on the part of the seller to ship or deliver the goods.  2 Meacham on Sales, Secs. 1081, 1082 and 1123; 2 Schouler's Personal Property, Secs. 281 and 285; L., N. A. & C. Ry. Co. v. Iron Co., 126 Ill. 294; Weill v. Am. Metal Co., 182 Ill. 128; Penn. Coal Co. v. Ryan, 107 Ill. 226.  This principle is elementary and it is not and cannot be controverted.

Under the law a compliance with these provisions of the contracts required appellees to prove that certain specific orders were given describing the kind and quantities of lumber and shingles required with directions as to brands and shipments and when and where the same were to be shipped, and that such orders were not filled by appellant within a reasonable time thereafter.  Until this was done appellant was not in default.

On the trial appellees offered testimony tending to show in a general way that orders were given to appellant for lumber and shingles, which were not filled promptly; but no proof was made of orders given for a specific quantity, kind and grade of lumber and shingles with directions as to how the lumber should be dressed or shipped as provided in the contracts.

This is an action to recover damages for non-delivery of

the lumber and shingles according to the provisions of the contracts of sale. The law is that where goods are to be delivered in installments, or as required by the purchaser, as in this case, the true measure of damages is the difference between the contract price and the market prices or values at the different times when such articles were required or ordered. Smith v. Dunlap, 12 Ill. 184; Phelps v. McGee, 18 Ill. 155; Sleuter v. Wallbaum, 45 Ill. 43; Deere v. Lewis, 51 Ill. 254. And it is the difference between the contract price and market price on the day or at the time of the failure to deliver and not on some other day or time.

The evidence must show the date of the demand, the failure to deliver and the contract and market prices at the date delivery should have been made. It was incumbent upon appellees to prove these facts as to each order for lumber and shingles, in order to lay the foundation for damages and furnish the true measure thereof. Appellees made no attempt, as shown by the record, to meet these requirements. Evidence as to the range of market values from the dates of the contracts until some time in the year 1891 was offered by appellees. But the evidence did not tend to fix the market prices at any particular time or times when orders were given or the lumber or shingles should have been shipped. This left the jury to guess or speculate as to the amount of the actual damages suffered by appellees. This was clearly erroneous.

The admission of the testimony of Mr. Browne as to the computation of damages on the basis of an average advance of twenty cents in the market value of shingles had no foundation in the evidence, and was therefore error. This is also true of his evidence as to the lumber. This method of proving damages has no sanction in the law, where the evidence before the jury, as in this case, does not give them the essential elements for the assessment of damages.

The verdict includes damages for shipments of lumber to persons at Iron Mountain. The uncontroverted testimony is that these shipments were for the use of the Iron Mountain yard under the reservation in the contract. In this regard

and as to such items the verdict was contrary to the evidence.

The evidence of the shipments to Kelley & Co. should have been excluded for the reason that the evidence of the invoice prices to Kelley & Co. afforded no legal basis or rule of damages.

For the errors above indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*