## Chicago Title & Trust Company et al., Appellees, v. Sagola Lumber Company, Appellant.

### Gen. No. 14,468.

1. CONTRACTS—*effect of notice of intention to abandon.* If a party to a contract gives notice to the other party thereto that he does not intend further to perform the same the party receiving such notice has a right to treat the same as a breach and to bring an action for the damages resulting from such breach.

2. EVIDENCE—*when objection to competency of witness comes too late.* An objection to the competency of a witness comes too late if made after such evidence has been offered and received.

3. EVIDENCE—*when admission of erroneous, harmless error.* The failure of the court to exclude certain testimony constitutes harmless error if no fact was stated in answer to the question to which objection was made which had not already been stated by such witness in answer to questions to which no objections were made.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed May 11, 1909.

LAWRENCE P. CONOVER, for appellant.

ATWOOD, PEASE & LOUCKS, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

This case was before this court at the March term 1905, when a judgment for the plaintiffs was reversed and the cause remanded. Sagola Lumber Co. v. Chicago Title & Trust Co. et al., 121 Ill. App. 292. The retrial of the case resulted in a verdict for the plaintiffs for $4350. The damages claimed by the plaintiffs amounted to $4350, of which $3343.16 was for damages for breach of the lumber contract and $1007.20 for breach of the shingle contract. The plaintiffs remitted $1007.20 the damages awarded for breach of the shingle contract, and the court denied defendant's motion for a new trial, gave judgment on the verdict for $3342.80, the damages awarded for breach of the lumber contract, and from that judgment the defendant prosecutes this appeal.

The contention of appellant that there is a fatal variance between the averments of the declaration and the evidence cannot be sustained. The plaintiffs in their declaration alleged a breach of the lumber contract, and the cause of action alleged was for the damages they alleged they had suffered in consequence of such breach. The evidence for the plaintiffs tended to prove notice by the defendant to the plaintiffs about November 30, 1890, that the defendant did not intend to further perform the lumber contract, and this gave the plaintiffs the right to treat such notice as a breach and bring their action for the damages resulting from such breach. Collins Co. v. Stephenson, 189 Ill. 200, 205; Roebling Sons Co. v. Lock Stitch Fence Co., 130 id. 660, 667.

The original plaintiffs were Edward Browne, Robert L. Chapin, William P. Cary and Arthur C. Lombard, doing business as the Browne-Chapin Lumber

Company. The contracts sued on were between the plaintiffs and the defendant, then known as the Laing Lumber Company. They were negotiated by Browne for the plaintiffs, and by John O'Callaghan, president of the defendant, for the defendant. Pending the suit Browne was adjudged a bankrupt, and the Chicago Title and Trust Company was appointed trustee of his estate. His bankruptcy was suggested in this suit and an order entered that the cause: "proceed in the name of Chicago Title and Trust Co., trustee in bankruptcy of Edward Browne, bankrupt, and Robert L. Chapin, William P. Cary and Arthur L. Lombard." Browne testified for the plaintiffs, without objection by the defendant, that he had a conversation with O'Callaghan November 30, 1890, and that in such conversation O'Callaghan said the defendant would not fill any more orders of the plaintiffs for lumber; that "there was no use of sending more orders for lumber, for he would not fill any more orders for lumber under the contract." After Browne had so testified without objection, defendant moved to exclude his testimony as to conversations with O'Callaghan, on the ground that such conversations were with an agent of the defendant who had since died, and that under section 4 of the Act in relation to evidence and depositions, Browne was not a competent witness as to conversations with O'Callaghan. Said section is as follows:

"In every action, suit or proceeding, a party to the same who has contracted with an agent of the adverse party, the agent having since died, shall not be a competent witness as to any admission or conversation between himself and such agent, unless such admission or conversation with the said deceased agent was had or made in the presence of a surviving agent or agents of such adverse party," etc.

Browne testified that said conversation with O'Callaghan was in the presence of Laing, the secretary and treasurer, and Sloan, the bookkeeper of the de-

336 APPELLATE COURTS OF ILLINOIS.

Chicago Title & Trust Co. v. Sagola Lumber Co., 148 App. 333.

fendant. Browne was cross examined by counsel for the defendant. At the close of the evidence in chief for the plaintiff, after proving that O'Callaghan, Laing and Sloan were dead, the defendant renewed its motion to strike out the testimony of Browne as to conversations with O'Callaghan. The motion was denied and the defendant excepted. The defendant then, in pursuance to an agreement made at the beginning of the trial, read the testimony of O'Callaghan, taken on the former trial of the case.

The subject-matter of the testimony of Browne was competent evidence; the only ground of the motion to strike out was that the witness was incompetent. This was an objection that the defendant might waive and will be held to have waived by failing to make it when the testimony was offered. 1 Greenleaf's Evidence, sec. 421; Hanford v. Obrecht, 49 Ill. 146; C. U. T. Co. v. May, 221 *id.* 530; Standley v. Moss, 114 Ill. App. 612. It is not contended that defendant was not, when the testimony was admitted, aware that O'Callaghan, Laing and Sloan were dead. The rule as to the time when a party aware of the objection to the competency of a witness must take that objection, is stated in the section of Greenleaf above cited, as follows:

"In regard to the time of taking the objection to the competency of a witness, on the ground of interest, it is obvious that, from the preliminary nature of the objection, it ought in general to be taken before the witness is examined in chief. If the party is aware of the existence of the interest, he will not be permitted to examine the witness, and afterwards to object to his competency, if he should dislike his testimony. He has his election, to admit an interested person to testify against him, or not; but in this, as in all other cases, the election must be made as soon as the opportunity to make it is presented; and failing to make it at that time, he is presumed to have waived it forever."

We think that the motion to strike out was properly

overruled on the ground that the testimony was, with knowledge on the part of the defendant, of the facts on which the motion to strike out was based, admitted without objection.

It is further contended by appellant that the court erred in permitting Brown to testify to certain statements of O'Callaghan in relation to the Iron Mountain yard of the defendant made before the contract was signed, on the ground that such evidence tended to vary the terms of the written agreement made by the parties. We think that the objection of the defendant to such testimony should have been sustained, but that the action of the court in overruling defendant's objection and admitting the testimony was not harmful to the defendant. Browne testified for the plaintiffs, without objection, that the evening that the contracts were signed, and before they were signed, O'Callaghan said to him that defendant: "was going to want some lumber for their little retail yard at Iron Mountain, and he would like to reserve what they would need for that yard. Q. The retail trade? A. Retail trade, but mostly of the lower grades. He said that it was their home town and they had been getting a little stuff from the mill, shipping down in parts of cars at a time, but they thought it would be best to have a little retail yard there." After this testimony had been given without objection, the following questions were asked and answered over the objection of the defendant, to which rulings the defendant excepted: "Q. Did you have any talk with Mr. O'Callaghan about the character of that trade, what kind of a yard it was to be? A. Yes, it was to supply retail trade. * * * Q. Mr. Browne, what did Mr. O'Callaghan say to you in regard to the character of this yard at Iron Mountain? A. He said they were going to put a little retail yard at Iron Mountain; that there was some building to be done; they thought there was going to be considerable building there that summer, and that they had figured

with this contract of ours with other things; that they didn't want to bother with any little retail business up at the mill, and he had a special man at the mill and was going to supply the wants of the place right there. Q. Retail yard? A. Retail yard." No fact was stated in answer to the questions to which objection was made which had not already been stated by the witness in answer to questions to which no objection was made and therefore, as has been said, in our opinion, the answers to the questions to which objections were made were not harmful to the defendant.

The remaining contention of the defendant is, that: "the verdict was excessive and contrary to the evidence." By the lumber contract the defendant agreed to sell to the plaintiffs and the plaintiffs to buy of the defendant, at the prices therein specified, all the lumber the defendant then had on hand and all it should manufacture up to November 30, 1890: "except such portion of said stock as may be required by the Laing Lumber Company's yard at Iron Mountain, Mich."

In assessing the damages the jury excluded the lumber shipped by defendant prior to November 30, 1890, to the Iron Mountain yard, but included lumber which was shipped direct to purchasers on orders which the evidence tends to show were sent to the defendant at its mill from its yard at Iron Mountain. The defendant kept in its books at the mill an account with the Iron Mountain yard, in which was entered the lumber shipped direct to that yard and also accounts with each buyer, in which was entered the lumber shipped on orders said to have been received from the Iron Mountain yard. These last mentioned accounts were not transferred on the books to the account of the Iron Mountain yard, nor were they entered in the books of the Iron Mountain yard. We think that from the evidence the jury might properly find that the lumber shipped by the defendant from its mill direct to buyers and charged in its books to such buyers,

and not to the Iron Mountain yard, was not lumber "required by the Laing Lumber Company's yard at Iron Mountain," and might properly include the same in their assessment of damages.

In assessing damages on account of the lumber on hand at the mill, November 30, 1890, no allowance or deduction was made by the jury from the stock on hand on account of the lumber which the Iron Mountain yard might require after November 30, 1890, and appellant insists that the allowance of damages on account of lumber which said yard should require between November 30, 1890, and May 1, 1891, was improper. With this contention we cannot agree. We think all the lumber on hand at the mill at the time of the breach of the contract was properly included by the jury in assessing plaintiff's damages.

No complaint is made of the rulings of the court on instructions to the jury. The record is, we think, free from reversible error and the judgment will be affirmed.

*Affirmed.*