I. M. Nathan, trading as Chicago Brush Manufacturing Company, Appellant, v. National Brush Company, Appellee.

Gen. No. 7,306.

Sales—*sufficiency of evidence of damages to buyer from breach of contract for sale of articles to be manufactured.* In an action by the buyer for damages for breach of contract for the manufacture and sale of brushes of a special type which plaintiff was under contract to resell to the United States government, it was not error to refuse to give a peremptory instruction for plaintiff for the difference between the contract price of the brushes which defendant failed to deliver and the amount which plaintiff paid to other parties for like brushes, less an admitted credit for the amount due defendant for brushes delivered to but not paid for by plaintiff, which was pleaded by defendant as a set-off, where there was no evidence that the amount paid by plaintiff was in excess of the reasonable cost of manufacture, or of the value on the open market or of the loss of profits, and in such case a verdict for the amount of the admitted credit in favor of defendant on the plea of counterclaim was proper.

Appeal by plaintiff from the Circuit Court of Kane county; the Hon. C. F. Irwin, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed January 7, 1924. Rehearing denied April 2, 1924.

Julius N. Heldman and William N. Rafferty, for appellant.

Frank G. Plain, for appellee.

Mr. Presiding Justice Partlow delivered the opinion of the court.

In the circuit court of Kane county, appellant, I. M. Nathan, doing business under the name of the Chicago Brush Manufacturing Company, began suit against appellee, the National Brush Company, a corporation, to recover damages for the breach of a contract. The appellee filed the general issue and two special pleas,

the last one being a plea of set-off. There was a trial by jury, a verdict in favor of the appellee for $511.03 under his plea of set-off, and this appeal was prosecuted.

The evidence shows that on August 1, 1917, the appellant sent to the appellee an order for 20,000 deck scrub brushes at $34.20 per gross, to be delivered 1,500 to 2,000 weekly, the entire shipment to be completed within 90 days. The order was accompanied by a letter in which appellant advised appellee that these brushes were to fill a contract with the United States government and that the appellant was under bond for the faithful performance of the contract. Appellant did not tell appellee the price the government was to pay for the brushes. As the shipments were made, an invoice and bill of lading accompanied each which had printed thereon, "Terms 2 per cent 10 days, net 30 days." The goods were not shipped as specified and there was considerable correspondence between the parties, and the appellant and his brother visited the factory of the appellee in Aurora to urge more rapid delivery. Some shipments were made, however, but not in the quantities agreed upon. When invoices were received appellant made remittances covering the amount of the invoices, but payment was stopped on two checks, dated October 29, 1917, amounting to $511.03, which were sent by the appellant to the appellee. On November 2, 1917, appellant wrote appellee informing him that the payment of these checks had been stopped and that "we shall not say what we propose to do until we have an expression from you." In answer to this letter the appellee promised to ship the remainder of the order upon condition that appellant would pay for the brushes already delivered and pay $3.80 per gross over the former price upon future shipments. No other shipments were made and the appellant on August 5, 1918, began this suit.

The declaration alleged that on July 31, 1917, appellant entered into a contract with the United States government for 20,000 brushes for $10,140; that appellant entered into the contract with appellee; that 5,145 brushes were furnished, for which the appellant paid $710.60, leaving $511.03 unpaid; that the appellee failed to deliver 14,855 brushes, and appellant was compelled to purchase the same on the open market at $50.40 per gross or thirty-five cents apiece; that after allowing the credit of $511.03, there was due the appellant as damages $1,160.15.

In addition to the plea of the general issue, appellee filed a plea in which it was alleged that before it accepted the order the appellant agreed that upon receipt of the bill of lading he would pay immediately for merchandise shipped, but later he refused to comply with this agreement, and, by reason of such refusal, appellee refused to furnish the remainder of the brushes. The third plea was a plea of set-off for goods shipped and not paid for. An affidavit of merits was attached to appellee's plea, which alleged that upon the appellant's promise that payments would be made immediately upon receipt of the bill of lading, appellee made shipment of 2,970 brushes; that appellant paid for a part of the brushes but failed to pay the balance due and on account thereof appellee refused to ship any more brushes.

The appellant, at the close of all the evidence, asked for a peremptory instruction, directing the jury to return a verdict in his favor for his damages, less the $511.03. This motion was denied and the verdict was returned as above stated.

Appellant contends that the verdict is against the law and the evidence; the court was in error in refusing to give the peremptory instruction, in overruling the motion for a new trial, and in entering judgment.

The appellee contends that appellant, having accepted delivery for which he gave appellant his check, and thereafter refused to honor the check, the appellee

was not obliged to make future delivery until the check was paid; that appellant admitted that appellee was entitled to the credit of $511.03; that, even though the appellee was not entitled to the verdict as rendered, the court did not commit error in refusing to give a peremptory instruction for the reason that there was no competent evidence upon which to base the instruction.

We think it is only necessary to consider one question which is conclusive of the case. It is admitted by the pleadings and the evidence shows that $511.03 worth of brushes were delivered for which appellee has not been paid. If the evidence does not establish the damages as claimed by appellant then appellee would be entitled to pay for the brushes which he furnished for which payment has not been made. If the goods had a market value and the appellee failed to comply with its contract, then the measure of damages would be the difference between the contract price and the market price at the times the articles were required to be delivered. If the goods could not be purchased on the open market at the time when they should have been delivered, and the appellee knew the appellant had already sold the goods to the government, then the measure of damages would be the net profit which the appellant would have made on such resale. *Carpenter v. First Nat. Bank of Joliet,* 119 Ill. 352; *Meyer, Hess & Co. v. Way,* 187 Ill. App. 67; *Sagola Lumber Co. v. Chicago Title & Trust Co.,* 121 Ill. App. 292; *Armeny v. Madson & Buck Co.,* 111 Ill. App. 621; *Lapp v. Illinois Watch Co.,* 104 Ill. App. 255; *Rhea-Thielens Implement Co. v. Racine Malleable & Wrought Iron Co.,* 89 Ill. App. 463.

The appellant testified that the brushes were of a special kind; that they could not be purchased upon the open market; that the only way they could be obtained was to have them manufactured; that there was no particular price for them. He testified that after

appellee defaulted on its contract he got the best price from the Ox Fibre Brush Company at thirty-five cents per brush; and purchased from that corporation 14,855 brushes at thirty-five cents; that he paid the Earl Brush Company for 1,045 brushes at thirty-four cents per brush; and that his total amount of damages, after deducting the $511.03, was $1,160.15. The declaration alleges that appellant had to purchase the remainder of the brushes at $50.40 per gross, while the evidence on damages is based on the fact that the brushes had to be specially made. Even if the measure of damages was as testified to by the appellant, there is no evidence in the abstract that the amount which he paid in excess of the contract price was the fair and reasonable cost of manufacture. There is no evidence of value on the open market and no evidence of loss of profits. For this reason there is no competent evidence on which to base the damages claimed by appellant and for that reason the court was not in error in refusing to direct the verdict for appellant. The verdict as rendered is sustained by the evidence and will have to be affirmed.

*Judgment affirmed.*