Anita Feder, John Souris and William Souris, Plaintiffs-Appellants, v. Illinois Power Company, Defendant-Appellee.

Term No. 54–M–5.

Opinion filed October 1, 1954.
Released for publication October 19, 1954.

LINDAUER, LINDAUER, PESSIN & NIEMAN, of Belleville, for appellants.

JOHNSON & JOHNSON, of Belleville, for appellee.

MR. JUSTICE BARDENS delivered the opinion of the court.

This appeal by plaintiffs is taken from a judgment entered on a directed verdict at the close of plaintiffs' case. The contention is made that sufficient evidence was presented to raise an issue of fact requiring submission to a jury.

The complaint charges that on February 1, 1951, plaintiffs' building was damaged by fire because of defendant's negligence in allowing gas to escape from its distribution system and come into plaintiffs' basement where it was ignited by the coal furnace. The negligence charged in the complaint was: (a) Permitting the escape of gas from its gas-distribution system to plaintiffs' premises and causing the ignition of said gas, resulting in explosion, fire and damage, with defendant's actual or constructive knowledge; (b) Failing to conduct reasonable inspection of its lines, conduits, pipes, valves and other machinery of its gas system in the vicinity of West Main Street and North Belt Line in Belleville for a long time before February 1, 1951; (c) Failing to conduct reasonable pressure tests of the gas in its system for a long time before said date; (d) Failing to discover the escape of gas from its system although it had actual or constructive knowledge of the condition; (e) Failing to maintain and operate its gas system so as to prevent escape of gas. Defendant urges that there was no evidence fairly tending to show that it was guilty of any of these acts charged as negligence, and that there was no evidence tending to show that the escape of gas from defendant's main was the proximate cause of the fire in plaintiffs' building.

Plaintiffs' evidence showed that on February 1, 1951, and prior thereto they owned real estate located at the northwest corner of West Main and North Belt Line in

Belleville improved with a two-story building on the first floor of which plaintiffs conducted a restaurant and confectionary. There was a full concrete basement in which was located an ordinary hand-fired coal furnace; on the second floor the Souris brothers had living accommodations. A stairway connected the rear of the main floor with the second-floor living quarters. February 1, the day in question, was the day of the week when the confectionary and restaurant did not open. It was six or seven degrees above zero and snow had fallen the night before. The Souris brothers, plaintiffs, on awaking came downstairs from their living quarters to the main floor. William awoke about 9:30 or 10:00 a. m. and fired the coal furnace in the basement, which, the testimony showed, was near the sewer opening in the basement. No combustible materials were stored in the basement. There was, however, a gas stove which while not in use at the time was connected up and was used from time to time. The evidence was that the electrical wiring was all in conduits. After firing the furnace, William Souris left the top furnace door slightly open and came on up to the main floor and read a magazine. John Souris testified that he got up about 10:00 a. m., went to the storeroom and read the paper, then went to the kitchen and heated some water on the gas stove for instant coffee. After finishing his coffee he returned to the storeroom when, he testified, "I heard something like shake off the building and went back and around to look what it was and the first thing I see was all kind of smoke and flame coming off the floor in the kitchen." He called to his brother that there was a fire and told him to get the fire department. In the meantime he ran upstairs to save the money and could not get down because of smoke and flames and had to be helped out of a window by the fire department. The testimony of the Fire Chief was that the alarm was received by the department at 11:25 a. m.

Before the fire, plaintiffs kept some cats in the basement; they were found dead in the basement after the fire, but they had not been burned.

The fire department arrived about 15 minutes after the alarm was turned in. A contractor testified for the plaintiffs that he examined the furnace after the fire and it looked fair to him.

Defendant's manager testified that his company supplied the gas in the Belleville system, which it owned, and its source of supply was the Mississippi River Fuel Company. The defendant had a 10-inch main coming from Centerville Twp. which extends along the west side of 46th Street. One block south of Main Street the defendant has a regulator system for controlling the pressure. When the gas goes through a valve at this regulator station it enters a pipe which goes to Main Street. The pipe is three feet underground and connects with a gas main at the intersection in question. Main Street is divided by islands and the gas main is about four feet from the island in the south portion of Main Street. This line comes from East St. Louis, and it is a 12-inch main. No one is in constant attendance at the 48th Street regulator station. This main which extends all the way to 6th Street in Belleville, was installed in 1909. The 10-inch main coming up 46th Street ties in with the 12-inch main at the intersection and continues to the east of the intersection as only one 12-inch gas main. There were no regulators in this 12-inch main between East St. Louis and 46th Street.

Plaintiffs' Exhibit No. 2 shows the pressure record at 6th Street on the day in question. At midnight it recorded 14 pounds pressure; before 11:00 a. m. 13¾ pounds pressure; at 11:15 a. m. 5 pounds pressure; a little later 4¾ pounds. In 10 minutes (10:50 to 11:00) the pressure dropped 5 pounds and in the next 15 minutes it dropped another 4 pounds.

The manager went to investigate the nature of the gas escaping right after 12:00 noon. The defendant's workers drilled holes in the pavement where the break in the main occurred. It was cold and snow on the ground, but the gas had blown the snow away at the place where the break in the main occurred. After excavation it was learned that the 12-inch main was completely broken open. This break was several hundred feet east of plaintiffs' premises.

The defendant had no permanently installed pressure-testing facilities for a 7-mile distance between 9900 West Main and 6th Street. About 30 per cent of defendant's customers were between 9900 and 4600 West Main and most of the homes had utility and sewer lines underground. Each customer owns his own line from the main to his residence.

The New England Forestry Company had been employed by defendant in 1950 and again in January 1951, to inspect the mains and the defendant investigated every report of escaping gas odor.

Plaintiffs recognize that their evidence is circumstantial but argue that the facts proven add up to form a sufficient factual basis for their theory of the cause of the fire to require its submission to the jury. They point out the relationship in point of time between the gas leak and the subsequent fire; the high pressure in the gas main sufficient to push up through three feet of ground and blow away snow, and the likelihood that such pressure would force gas into sewers and subterranean pipes, crevices and therefore into plaintiffs' property. They argue that the rapidity of the spread of the fire showed that a highly flammable agency was involved and they attempt to negative any dangerous condition of their own making with evidence of the wiring being in conduits and the absence of combustible materials on the premises. Plaintiffs then urge that defendant was negligent (1) in using pipe more than

40 years old without inspections by men specially trained therefor more often than once a year; (2) in failing to maintain regulators in the 12-inch main from 9900 W. Main St. to 17th St., a distance of seven miles; (3) in failing to maintain pressure-testing devices at any point in this seven-mile stretch; and (4) in providing no way to shut off gas after a break or leak in the main is discovered. Defendant contends there is no evidence that it is negligent or dangerous to use metal pipe for 40 years or more, no evidence that inspections of mains are necessary or customarily made by specially trained men more often than once a year, and that a previous inspection would not have disclosed the sudden break in the main three feet underground; that there is no contention or proof that the line had too much pressure and that therefore more regulators were required. Defendant further points out that it could not shut off the gas on a severely cold day even if there were a way to do so, because of the calamity this would cause to other users of gas, residential, commercial and industrial. Defendant also contends there is no showing that the gas leak was the proximate cause of the fire.

■■■■ We agree with the contentions of the defendant. While it is common knowledge that the elements will corrode a metal pipe, there is no evidence of the length of time necessary for such corrosion to render a pipe dangerous. We find no evidence that defendant's pipes were in fact in such corroded and dangerous condition. There is no evidence which tells the court how frequently inspections of the gas line should be made nor what type of inspection would be required to discover a possible weakness in the underground pipe. Nor can we find any evidence which would demonstrate that a lack of regulators or shut-off valves was an unusual condition in the industry and therefore constituted negligence.

■ In connection with plaintiffs' burden relating to proximate cause no showing was made that plaintiffs' own sewer or gas piping and connections were in proper repair. These facilities were not the defendant's responsibility. *Clare v. Bond County Gas Co.,* 356 Ill. 241, 190 N. E. 278; see also 26 A.L.R.2d 156.

■ Plaintiffs argue that escaping gas could have entered sewers or subterranean crevices to reach their premises. The evidence shows that other premises were in that neighborhood and some closer to the leak than was plaintiffs' yet no showing was made that any gas escaped to other buildings or to any sewers or crevices. To presume it escaped to plaintiffs' building under these circumstances would be purely speculative.

We hold that the lower court properly directed a verdict for the defendant and its judgment is affirmed.

*Judgment affirmed.*

CULBERTSON, P. J. and SCHEINEMAN, J., concur.