5 Ill. App.2d 27 (1955)
124 N.E.2d 669
Elsie Beverly et al., Plaintiffs-Appellees,
v.
Central Illinois Electric and Gas Co., Defendant-Appellant.
Gen. No. 10,778.
Illinois Appellate Court  Second District.
February 17, 1955.
Released for publication March 8, 1955.
*28 Hyer, Gill & Brown, of Rockford, and Burrell & Holtan, of Freeport, for appellant.
Bert P. Snow, of Freeport, for appellees.
MR. JUSTICE DOVE delivered the opinion of the court.
This action was brought by the plaintiffs against the Central Illinois Electric and Gas Company, a corporation, to recover damages to certain real and personal property which they owned and also for personal injuries suffered by the plaintiff, Elsie Beverly, as the result of an explosion which occurred in the dwelling where the plaintiffs resided. The complaint charged the defendant with acts of negligence, as hereinafter set forth, all of which were traversed by the answer of the defendant. The issues thus made by the pleadings were submitted to a jury, resulting in three verdicts: one in favor of Elsie Beverly for seven thousand dollars for damages to her real estate; another in her favor for eight thousand dollars for personal injuries which she suffered; and a third verdict for forty-five hundred dollars for damages to the personal property of the plaintiffs, Elroy J. Heim and Violet Heim. Upon these verdicts judgments were rendered, and the defendant appeals.
The complaint alleged that on January 13, 1953, plaintiff, Elsie Beverly, was the owner of certain real estate located at 547 North Waddell avenue, in Freeport, Illinois; that she was selling this property to the plaintiffs, Elroy J. Heim and Violet Heim (husband and wife) on a contract for deed; that the said real estate was improved with an eight-room frame house *29 of the approximate value of seventy-five hundred dollars; that the defendant was engaged in the distribution of natural gas in the City of Freeport and had a franchise for such purpose; that the defendant installed a gas main running down the east side of North Waddell avenue, which gas main passed within thirty-three feet of the west edge of plaintiffs' house and that Waddell avenue was a dirt and gravel street. The complaint then alleged that the defendant was guilty of one or more of the following negligent acts or omissions: (a) Negligently maintaining and operating its gas main along North Waddell avenue; (b) negligently laying its gas main at the shallow depth of two to three feet below the surface of a gravel and mud street; (c) negligently laying its gas main at a shallow depth in a street which it knew was traveled by heavy vehicular traffic; (d) negligently installing its gas main over a concrete culvert which was located about ninety feet from plaintiffs' house and which gas main came within eighteen inches of the surface of the street where it passed over a concrete culvert; (e) negligently installing a dresser coupling in the gas main at the point near where the gas main rose over the culvert aforesaid, which coupling would easily separate when subjected to heavy vehicular traffic; (f) negligently installing its gas main in such a manner as to be incapable of containing the high gas pressure forced through the main; (g) negligently failing to properly inspect its gas main, and (h) negligently failing to odorize its gas so that the same could be detected in the event of escape. The complaint then charged that, as a direct and proximate result of one or more of the aforesaid acts or omissions, gas from the defendant's gas main escaped and entered the premises owned by the plaintiffs, and there accumulated in explosive quantities and, on January 13, 1953, did explode and damage the house of plaintiff, Elsie Beverly, and *30 the personal property of the plaintiffs, Elroy J. and Violet Heim, and severely injured the plaintiff, Elsie Beverly.
The evidence discloses that the plaintiffs' property faced west toward Waddell street in Freeport, and was about thirty feet from a dirt gutter which ran along the east side of Waddell street; that the north side of the house was about seventy-five feet south of Elm street, which was an east and west street intersecting Waddell and that neither street was paved, but each had dirt and gravel surfaces. In the fall of 1952, the City of Freeport had laid a public tile sewer in Waddell street about nine feet deep and thereafter the defendant laid a four-inch steel gas main in Waddell street from four to ten feet east of the city sewer and at about a depth of thirty inches in front of plaintiffs' house. In the north half of the intersection of Elm and Waddell streets, was located a subsurface culvert, which acted as a conduit for an underground stream. When the defendant laid its gas main it had to angle it upward where the culvert was located so as to permit passage over it, and at the point of passage over the culvert the gas main was about twenty inches under the surface of the street.
In order to effect such construction, it was necessary that the sections of the gas main be joined with what is known as a dresser coupling, which is a sleeve into which the opposing ends of the gas main are placed about five inches apart and the ends of the coupling are then anchored around the main. In November 1952, the plaintiffs had a sewer contractor lay a cast iron sewer lateral from the sewer main of the city in Waddell street to the northwest corner of their house. This sewer was about eight feet in depth where it connected with the city's main and extended on an upward gradient to about six feet, where it entered the plaintiffs' basement and passed about three and one-half to four *31 feet under the defendant's gas main. This sewer ditch connecting the city's main with the plaintiffs' property was backfilled with the same material which had been removed from it when digging. The defendant filled the trench in which it laid its gas main with about six inches of sand over the main and the balance with dirt. Where the sewer entered the plaintiffs' house at the northwest corner, it had a horizontal opening for the soil pipe and a vertical stub, which was also open, for later attachment to plumbing fixtures. The basement under the plaintiffs' house was only partially excavated, with the excavated portion being under the northwest portion of the house. In the excavated portion of plaintiffs' basement there was an automatic oil burner and a 275-gallon fuel oil tank which served the burner. In the kitchen of the plaintiffs' house there was located a standard propane gas stove against the north wall, which was serviced by outside tanks located at the northeast corner of the house.
Plaintiff, Elsie Beverly, testified that she was seventy years of age and had lived at the house in question for thirty-six years. She resided there with her daughter, the plaintiff, Violet Heim, and her daughter's husband, the plaintiff, Elroy J. Heim. On the day of the explosion, January 13, 1953, she testified that she used the propane gas stove to make coffee in the morning and then went to visit her granddaughter. The stove worked properly at that time and she did not notice any gas escaping from it. She returned home about 3 o'clock in the afternoon, at which time she made herself a cup of Sanka, heating the water for it on the stove. At about 3:20 o'clock, she went into the kitchen to start the evening meal. She put some potatoes on the stove in a pan of water and turned on one of the burners. She then put a skillet on the stove to warm and turned on another burner. When she turned on the second burner, she testified that "there was a sort of a *32 fire which flamed up from it. It was in the air, one and one-half to two and one-half feet above the stove." She turned the fire off and then turned it back on again, and the same thing happened, so she turned off both burners. She then called the propane gas company and asked the company to send someone out, but no one was available at that time and she was instructed how to shut off the propane gas tank. She tried to shut off the tank, but was unable to do so. She then called the fire department and reported a fire at her home. The fire department got there in a few minutes and she went outside and then returned to the house and went into her bedroom to get some money which she had put away. She stated that she was standing in the bedroom in a kind of a daze when an explosion occurred and she was thrown to the floor and some of her clothing and hair caught on fire. She managed to pull herself to the bedroom window and, by hollering, attracted the attention of someone who rescued her.
Earl Young, testified he was a captain in the fire department and received Mrs. Beverly's call on the day in question and that he, with other men, answered the call, and when they got to the plaintiffs' residence, Mrs. Beverly told him her gas stove was flaming up and directed them toward the kitchen. He testified that he entered the house and was within ten to twelve feet of the kitchen when an explosion occurred and he was blown out of the front door and got burned; that after the explosion he noticed a fire in the northwest corner of the basement.
Raphael J. Pontius, testified that he was an assistant fire chief in the Freeport fire department on the day in question and went out to the plaintiffs' residence in response to a call. Some of the firemen were already on the scene when he arrived, which was after the explosion had taken place. He testified that he noticed the *33 effects of the explosion and observed fire coming out of the sewer pipe in the northwest corner of the basement, and he ordered this fire not to be put out for the time being, as he was fearful of an explosion. He went inside the house and found no fire above the kitchen, but a little in the attic. In the basement, there was some fuel oil on fire as a result of a burst nipple in the fuel line running from the 275-gallon tank to the automatic burner. The fuel oil was let out of the tank and the firemen washed it down the sewer with water from their fire hose. The fire from the sewer was allowed to burn for twenty minutes after he arrived, which, in his opinion, was about fifteen minutes after the fire started. He examined the plaster in the archway between the living room and the bedroom on the first floor on the north side of the house and found this plaster was bulged from the laths on both sides. He further testified that a couple of days after the fire, he was present when the propane gas stove was tested by representatives from the company which installed this stove; that a thorough test was made of all of the burners and the connections on the stove, and no leaks were discovered.
Leo Yaeger, testified on behalf of the plaintiffs to the effect that he was a lineman for the defendant on January 13, 1953, and that he was working on a housing project near the plaintiffs' home; that in the afternoon of that day, before the explosion, he went down to the intersection of Elm and Waddell streets and there saw bubbles coming up through the ground at a point above the defendant's gas main where it crossed over the culvert. Another witness, Louis Lamm, testified that he also noticed these bubbles about 11 o'clock in the morning, some four hours before the explosion; that in the afternoon, he returned to this intersection and noticed a lot more bubbles and could smell gas and thereafter heard and saw the explosion. He stated that the house *34 was lifted about a foot from its foundation by the explosion and the roof bulged up and the north wall came out.
Further evidence discloses that before the explosion occurred the doors of plaintiffs' house had been opened several times; that when gas passes through dirt and sand its odor tends to disappear because it is filtered out; that the fire coming out of the vicinity of the sewer opening, after the explosion, was a gas flame and was under a slight pressure; that there was no smoke from the fire emanating from the sewer pipe; that oil fires usually give out smoke and smudge; that the walls in the basement near the flame coming out of the sewer pipe were clean after the explosion; that the leak in the defendant's gas main was about eighty-five feet from that part of the house where the explosion seemed to have occurred; that the north wall of the house was blown out and that there was about an inch and one-half separation in the floor of the living room of the house from the foundation near the north wall; that propane gas is heavier than natural gas and therefore has a tendency to collect in pools on or near the floor, while natural gas, being lighter than air, tends to rise and disperse; that when an employee of the defendant came out to fix the leak after the fire, he dug north toward the point where the dresser coupling was located and while digging he found gas escaping in the trench which he dug and that this gas was escaping under sufficient pressure to blow sand into his eyes; that the sewer which entered plaintiffs' house was about three feet under the gas main and after it had been laid it was backfilled with loose dirt and gravel and was not tamped down; that the defendant's gas main was a four-inch cast iron pipe and was thirty-two inches under the surface in front of the plaintiffs' home and twenty inches under the surface of the street where the gas main crossed the culvert at *35 the intersection heretofore referred to; that the subsurface of the street, at the time of the explosion, was frozen, but that the top of the street for three or four inches had thawed sufficiently to become soft and somewhat muddy.
Richard Stafford, testified on behalf of defendant that he was a consultant gas engineer and that, at the request of the defendant, he conducted a test or an experiment in which the break in the gas main, which caused the explosion in question, was simulated by joining two lengths of pipe together with a dresser coupling and then burying them near the place where the original leak in the defendant's gas main occurred; that a mixture of air and Freon gas was pumped into the pipes in measured amounts and then allowed to escape; that bar holes were then driven along the line of the experimental gas main and to each side of it and also along the sewer lateral trench which leads into plaintiffs' house; that he then made periodic tests with a Halide indicator (an instrument for the measurement of the pressure of gas) which tests disclosed that in two hours' time, gas had followed the main line south to a point about twenty feet beyond the lateral of plaintiffs' sewer, but that it had not traveled laterally along the street or into the sewer lateral, nor could any gas be detected at or around the entrance of the sewer in the basement.
Counsel for appellant insists that there is no evidence in this record which tends to support the allegations of negligence charged in the complaint or which tends to show that it was defendant's gas which exploded and caused the damages complained of, and therefore, the trial court erred in not directing a verdict.
[1-4] The only question therefore presented to us by this record is whether there is any evidence which fairly tends to prove the allegations of the plaintiffs' *36 complaint. (Lindroth v. Walgreen Co., 407 Ill. 121, 130; Knudson v. Knudson, 382 Ill. 492, 494.) In Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, the court said: "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." Lindroth v. Walgreen Co., 407 Ill. 121, 133, is to the same effect.
The plaintiffs contend that the pressure in the defendant's main caused the escaping gas at the leak to follow the loose sand and dirt under the defendant's main and over the city sewer tile until it reached the plaintiffs' sewer lateral running into the plaintiffs' house, and that this gas, as a result of the pressure, followed this lateral through the loose dirt and backfill until it reached plaintiffs' house, where it escaped into the basement and ultimately dispersed through the house and resulted in the explosion in question. The defendant contends there is no evidence whatever to justify this position. It takes the position that the explosion was caused by propane gas escaping from the stove in plaintiffs' kitchen.
[5] After a careful consideration of all the evidence in this record, including the various photographs *37 and other exhibits found in this record, not overlooking the experiment of the defendant's expert witness, we are unable to say that the jury was not warranted in finding that the explosion was caused by the escaping of gas from the defendant's main and its ultimately reaching the basement of the plaintiffs' house. There was evidence from which the jury could conclude that there was a leak in defendant's gas main and that gas was escaping at the point of this leak not far from plaintiffs' premises, and from the evidence the jury was warranted in finding that this escaped gas dispersed through loosely packed soil and eventually reached plaintiffs' house, where it ultimately exploded and caused the damage complained of. The record, in our opinion, contains sufficient evidence to establish a reasonable basis from which the jury could conclude that defendant was guilty of the negligence charged, and in that state of the record we would not be justified in substituting our conclusions for those of the jury. (Pitrowski v. New York, C. & St. L.R. Co., 4 Ill.2d 125, 129.) We have examined the various authorities cited by the defendant, including Feder v. Illinois Power Co., 3 Ill. App.2d 319. These cases are not at variance with the conclusion arrived at by the jury in this case, whose verdict has been approved by an able and distinguished trial judge. No errors of law either in the admission or rejection of evidence or in the course of the trial or in the instructions are complained of. The judgment of the trial court must be affirmed.
Judgment affirmed.
WOLFE, P.J., concurs.
CROW, J., took no part.