Polly D. Green, Administratrix of Estate of Paul H. Green, Deceased, and Polly D. Green, Individually, Appellees, v. John Keenan, Appellant.

**Gen. No. 10,879.**

Second District.
April 27, 1956.
Rehearing denied May 21, 1956.
Released for publication May 22, 1956.

Petersen & Goldsmith, of Aurora, for appellant; John S. Petersen, and David D. Dyer, Jr., both of Aurora, of counsel.

Allen, Matthews, Jordan & Dean, of Aurora, for appellees; Everett Jordan, and John T. Matthews, both of Aurora, of counsel.

JUSTICE EOVALDI delivered the opinion of the court.

This action was brought by Polly D. Green, individually, and as administratrix of the estate of her deceased husband, Paul H. Green, to recover damages for personal injuries and wrongful death occasioned by the alleged negligence and wilful and wanton misconduct of the defendant, John Keenan, in driving his automobile.

On the evening of March 19, 1952, the plaintiff and her husband drove to the farm of John Roberg situated near the Village of North Aurora, Illinois, to feed some riding horses which belonged to the husband. The husband was driving his 1941 Willys Americar, and the plaintiff was riding with him as a passenger. After the horses were fed, the Greens got into their car to return to Aurora and Paul H. Green found that he could not get the car started. He made some repairs

to the engine under a light in Roberg's yard, and when he was still unsuccessful in getting it started, he asked Roberg to push him with Roberg's truck. Roberg pushed him out of his yard onto a gravel road, then onto a state highway called Butterfield Road. The car started then and ran a short distance and stopped. Roberg then pushed them to the intersection of Butterfield Road and State Highway 25 where they turned south on Route 25. Two or three attempts were made to fix the engine and both vehicles were stopped off the highway during these attempts. Roberg then told the Greens that he would push them into Aurora and they proceeded in a southerly direction on Route 25. At a point in the highway where there is a knoll and a decline from north to south, the Greens rolled on ahead of the Roberg truck. As Roberg, while still moving, was coming up to again make contact with the Green car which had slowed down upon reaching level ground, the defendant who was driving a new 1952 Ford automobile south on the highway collided with the rear of the Roberg truck with such force that the defendant's car was completely smashed; and the Roberg truck was rammed into the rear of the Green car which in turn was forced off the highway into a tree 150 feet from the point of impact. Paul H. Green was thrown out of the car into the middle of the pavement and suffered injuries from which he later died and his wife Polly D. Green sustained various injuries on her own account.

The evidence showed that there were other cars approaching from the opposite direction immediately prior to the collision but that they had already met the Green car and were some 500 feet north of the point of impact and that the headlights and taillights on both the Green car and the Roberg truck were on and in proper working condition at the time. The evidence further disclosed that defendant Keenan had

56

been drinking intoxicating liquor prior to the accident and that he was operating his car at a high rate of speed. He stated to one of the police officers of Aurora at the hospital, "Driving and drinking don't mix." The force of the impact itself showed that he was traveling at a high speed.

The case was tried before a jury and at the close of the evidence for plaintiffs, defendant moved for a directed verdict. Again at the close of all the evidence, defendant made like and similar motions which were denied. Whereupon the issues were submitted to the jury with instructions and defendant's three special interrogatories. The jury retired to consider their verdict at 5:43 p. m. on the 25th of February, 1955; by agreement of counsel and by order of court, it was agreed that the jury should sign, seal and deliver their verdict to the officer of the court and separate, and that the verdict should be presented to the court, opened and read on Monday, February 28, 1955, and counsel in their agreement further agreed to waive polling the jury; on said February 28, the verdict was opened and read, at which time a verdict in favor of the administratrix in the amount of $16,000.00 was returned, and a verdict for Polly D. Green, individually, in the amount of $650.00 was returned; a further verdict was returned finding the administratrix not guilty on defendant's counterclaim; the jury answered one special interrogatory finding the defendant guilty of wilful and wanton misconduct; the two other interrogatories were not answered. They were:

"Was the plaintiff, Polly D. Green, guilty of contributory, wilful and wanton misconduct at the time and place of the occurrence in question?
"Yes............ No............
"Was the plaintiff's decedent, Paul H. Green, guilty of contributory, wilful and wanton miscon-

57

■■■■■■■■■

duct at the time and place of the occurrence in question?

"Yes............  No............"

After reading the verdicts, the court entered judgment on same. Counsel for defendant was present in open court. No objection was made to the verdict or to the answer to the interrogatory, or the failure of the jury to answer the two unanswered interrogatories; no motion was made that they were insufficient, and no motion was made to send the jury back to complete their verdict or to answer the unanswered interrogatories. Defendant's first objection to the failure of the jury to answer the two interrogatories was in his motion for a new trial filed on March 8, 1955. The defendant moved the court for a judgment notwithstanding the verdict and for a new trial which said motions were denied by the court and judgment entered on the verdict of the jury. From said judgment, the defendant has filed this appeal.

The defendant's theory is that, as a matter of law, he was not guilty of negligence or of wilful and wanton misconduct as plaintiffs allege; that further, the plaintiffs were guilty of contributory negligence and wilful and wanton misconduct as a matter of law. He further contends that the trial judge should have directed a verdict in his favor; that in any event the trial judge erred in certain of his rulings in the trial of this cause; that he erred in giving certain instructions offered by the plaintiffs and modifying other instructions offered by the defendant, and denying still other instructions offered by defendant; and that he should have granted the defendant's motion for a new trial.

The plaintiffs' theory of the case is that defendant was guilty of both negligence and wilful and wanton misconduct and that there was ample evidence to sustain the jury's findings in support of the verdict.

58

■■■ The evidence in this case clearly presented a question for the jury as to the negligence and the wilful and wanton misconduct of the defendant. In answer to a special interrogatory the jury found that the defendant was guilty of wilful and wanton misconduct. On a motion for a directed verdict the court does not weigh the evidence. The court may properly consider only the evidence and inferences most favorable to the plaintiff; and it is only when there is no evidence tending to prove plaintiff's case that the court can grant either a motion for directed verdict or judgment notwithstanding the verdict. Lindroth v. Walgreen Co., 407 Ill. 121, 130; Beverly v. Central Illinois Electric & Gas Co., 5 Ill.App.2d 27. The rule is the same whether the charge is general negligence or wilful and wanton misconduct. Our Illinois courts have repeatedly said that the question of whether the defendant is guilty of wilful and wanton misconduct is a question of fact for the jury. Bernier v. Illinois Cent. R. Co., 296 Ill. 464; Streeter v. Humrichouse, 357 Ill. 234; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569. A court of review will not interfere with the verdict of the jury unless the jury's verdict is contrary to the manifest weight of the evidence. To be against the "manifest weight of the evidence" requires that an opposite conclusion be clearly evident. Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267; Griggas v. Clauson, 6 Ill.App.2d 412; Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, affirmed 401 Ill. 172. We have examined the record and do not find that the verdict is manifestly against the weight of the testimony. Under these circumstances, we have no right to set aside the jury's findings. There is no contention that the Green car and the truck pushing it were not in their proper lane of traffic and what the defendant did was to collide with the truck when there was ample opportunity for him to pass.

59

As the jury found the defendant guilty of wilful and wanton misconduct, the plaintiff's contributory negligence, if any, has no part in this case. The fact that the jury failed to answer two of the three special interrogatories submitted by the defendant does not alter the fact that they did answer one special interrogatory finding the defendant guilty of wilful and wanton misconduct. The right to submit interrogatories for special finding by the jury is controlled by statute. Paragraph 189, Chapter 110 of the Revised Statutes of Illinois [Ill. Rev. Stats. 1953, ch. 110, § 189] provides in any case where a general verdict is to be returned the jury will be required at the request of a party to find specially upon any "material question or questions of fact" which shall be stated to them in writing. The section then goes on to provide that submitting or refusing to submit such a question of fact to the jury may be reviewed on appeal as a ruling on a question of law. Then the paragraph provides: "when the special finding of fact is inconsistent with the verdict, the former shall control the latter and the court may render judgment accordingly." A special finding controls and supersedes a general finding only if inconsistent therewith. There was nothing inconsistent in the jury's verdicts and in its answer to the one interrogatory. If the defendant was not satisfied with the verdicts when they were opened and read, and if he was not satisfied with the answers made to the special interrogatories, he should at that time have objected and made a motion to send the jury back to complete their verdict by answering the two unanswered interrogatories. Not having done so, he is in no position now to complain, and he is bound thereby.

The defendant also complains that the court erred in admitting what he contends was improper and illegal evidence offered by the plaintiffs which consisted of certain photographs of the scene of the acci-

60

dent which were taken in the daytime about one year after the collision. The court, however, upon admitting the exhibits objected to, made the following statement: "The court will admit the exhibits for the limited purpose of showing the physical aspects of the highway near the point where the accident occurred, with the distinct understanding that it does not correctly portray the appearance of the highway at the time the accident occurred." The defendant also complains that certain other photographs admitted into evidence which were taken of the truck involved in the collision did not correctly portray the same since there was a spare tire in the back of the truck at the time of taking the picture which was not there at the time of the collision. We do not feel that the admission of these exhibits into evidence in any way prejudiced the rights of the defendant in the trial of the case. Further, we do not feel that the court committed prejudicial error in limiting the scope of cross-examination by the defendant of the plaintiff, Polly D. Green, concerning her knowledge of the defective condition of her husband's automobile prior to the collision. The scope of cross-examination is largely within the discretion of the trial court. It should be kept within fair and reasonable limits, and the court has a discretion in the conduct of the trial for that purpose. People v. Strauch, 247 Ill. 220; Davison v. People, 90 Ill. 221; Cooper v. Randall, 59 Ill. 317; Birmingham Fire Ins. Co. v. Pulver, 126 Ill. 329.

Defendant objects to certain matters in the instructions. The trial judge was literally swamped by the tender of over sixty-seven instructions in this case; forty-five of which were given. Eighteen were given for the plaintiff. Twenty-two were given for the defendant as submitted and five were given for the defendant as modified. Many of the instructions which were refused by the court dealt with the defendant's

theory of the case that the plaintiff, Polly D. Green, her husband and John Roberg were engaged in a joint venture at the time of the accident. There was no evidence in the record to substantiate the position that they were engaged in a joint venture and the court properly refused to instruct the jury along that line.

It would unnecessarily prolong the opinion to discuss each instruction objected to in detail. The defendant contends that plaintiffs' instructions one and two were unnecessarily long and tended to confuse the jury as to the issues in the case. This contention has little merit in view of the fact that the defendant submitted so many instructions in the case. It must be admitted that the number of instructions tendered by both parties in this case serves not only to reduce the effectiveness of the instructions as a benefit to the jury but also to lessen the likelihood of a reviewing court reviewing the decision of the jury because of alleged faulty instructions. In Schluraff v. Shore Line Motor Coach Co., 269 Ill. App. 569, wherein forty-eight instructions were tendered, the court said "The character and number of these instructions also serves to lessen our critical faculty toward them." We call particular attention to what the court said in Baker v. Thompson, 337 Ill. App. 327, at page 330, wherein the defense tendered twenty-seven instructions:

"The abuses and evils underlying the practice of trial attorneys in tendering to the court a multitude of involved, confusing and argumentative instructions has been growing and certainly merits some observation by a reviewing court. It is common knowledge that most plaintiff attorneys tender very few instructions. They do so because of their fear of intervention of error. . . . The converse is true with a majority of those who are interested in the defense of personal injury cases. It is of little moment to them that an error in the trial procedure may occasion a new trial. Delays, however occasioned, are always one of the best de-

fenses. Too often defense attorneys are prone to tender an excessive number of instructions, repeating the same proposition over and over, not with the honest design of informing the jury of the law, but with the thought of enforcing upon the minds of the jury the importance of their various defenses."

After careful consideration of the evidence and of the record in this case, we find no reversible error was committed and the judgment is accordingly affirmed.

Affirmed.

DOVE, P. J. and CROW, J., concur.