Kenneth P. Fraider, Individually and Executor of Last Will and Testament of Mollie F. Fraider, Deceased, etc., Appellees, v. Glenn Hannah, Administrator of Estate of Ethel Hannah, Deceased and Jennie Scott, Appellants.

Gen. No. 10,322.

Opinion filed August 17, 1949. Rehearing denied October 5, 1949. Released for publication October 7, 1949.

CHARLES G. SEIDEL and P. C. TYRRELL, both of Elgin, for certain appellant.

PAULSON, MORGAN & JORDAN and PAUL M. HAMILTON, all of Elgin, for certain other appellant.

SEARS & STREIT, of Aurora, and SORLING, CATRON & HARDIN, of Springfield, for appellees; CARL A. SORLING, of Springfield, BARNABAS F. SEARS and EDWARD F. STREIT, both of Aurora, and G. NORMAN KENNEDY, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This appeal seeks to reverse four judgments entered in the circuit court of Kane county for four plaintiffs in various amounts, all emanating from a very serious head-on collision between the automobiles of appellant and appellee.

The accident happened on August 17, 1946, at about 10:20 a. m. on U. S. Route 66 near Pontiac, Illinois. Early that morning Kenneth P. Fraider, Helen Fraider, his wife, Kenneth F. Fraider, his son, and Mollie F. Fraider, his mother, left Springfield, Illinois enroute to Michigan for a week's vacation. Kenneth Fraider lives in Springfield, Illinois, and his mother, who had been visting him, lived in Chicago. They were traveling in a 1938 green Chevrolet tudor sedan which was owned by Kenneth Fraider and was being operated by him. At his side was his wife, in the back seat, just behind him, was his son, and on the right side of the rear seat was his mother.

Kenneth P. Fraider was 37 years of age and was district manager of Illinois Bell Telephone Company at Springfield, Illinois. His wife was 38 years of age, his mother, 58, and his son, six. There is a daughter, Donna Mae Fraider, age 13, who was not along on the trip.

Occupying the other car involved in the accident was Jennie Scott and Ethel Hannah, both spinsters and both teachers in the public schools of Elgin, Illinois. They were on their way to Springfield, Illinois to visit a mutual friend. The car they were operating was a 1937 Chevrolet coupe, the property of Jennie Scott. Miss Scott spent the night of August 16, 1946 with Miss Hannah, who lives at Hampshire, Illinois. The following morning they started their journey, Miss Scott driving, but some place along the route Miss Hannah took the wheel and was driving at the time of the accident.

Near the point of the collision of the two cars is an intersecting, unpaved highway with a wide-spreading approach to Route 66. The highway was dry, the shoulder soft. It was a bright clear day, and the pavement was level and straight. The Fraider automobile was traveling at a rate of speed not to exceed forty miles an hour while the Scott car was moving at a slightly faster rate of speed.

Immediately following the Scott car was a Ford automobile having a Missouri license. Then following the Ford was a car being driven by Arthur J. Kuhn, an attorney in Chicago, Illinois, who testified at the trial.

Mr. Kuhn testified that while he was traveling south on Route 66 on the morning in question at about 10:00 to 10:30, he saw the Scott coupe suddenly swerve over onto the north lane of traffic, strike the plaintiff's car which was five feet east of the black center line and twenty-five feet north of center line of the intersecting roadway. There was metal, dirt, oil, and debris showered over the pavement at the point of impact. All of this was east of the center line. The two cars, when they collided, went into the air and came to rest on the east side of the pavement.

The foregoing facts are undisputed—all witnesses without exception testify accordingly. The plaintiffs

were entirely blameless. The tragic occurrence resulted in the death of Miss Hannah, the boy, and Mr. Fraider's mother. Kenneth Fraider and his wife were quite seriously and permanently injured.

The complaint filed on behalf of plaintiffs made divers charges of negligence. The defendant, no doubt as a tactical measure, filed counterclaims on behalf of each defendant. The jury, by their verdict, very properly found counter-defendant not guilty and found the defendants guilty in the original suits and assessed damages for Kenneth P. Fraider at $18,000; for Kenneth P. Fraider, as executor under the last will and testament of Mollie F. Fraider at $4,000; for Kenneth Fraider, as administrator of the estate of his boy, at $6,000; and for Helen J. Fraider at $20,000. Needless to say the usual motions were made by all parties at the appropriate time. Judgments were entered on the verdicts for plaintiffs in the amounts assessed by jury and this appeal ensued.

The record in this case is long and the briefs prepared by counsel for both appellant and appellee are elaborately and ably prepared.

There is very little dispute in the testimony of witnesses touching the occurrence. Likewise, there is no question about the serious character of the disabilities of both Mr. and Mrs. Fraider. Several hundred pages of the record pertain to their hospitalization, medication, treatment, and surgery, but since counsel for appellant make no serious complaint about the size of the verdicts, it will be unnecessary to touch but briefly on this phase of the case.

Kenneth P. Fraider had a fracture of the bottom portion of the tibia, a fracture of the fourth metatarsal, a fracture of the cuboid. His right leg showed marked swelling and discoloration. A cast was applied to the right foot and up to the calf of the leg. A circular stirrup was placed in the cast to take the weight off the broken part of leg and foot. Later he was suffering

from thrombo-plebitis of the right leg, which causes considerable pain. Hot and cold applications were necessary to facilitate drainage of the area. This treatment, along with elastic stocking, rest and elevation of the leg, is the only source of relief. This condition interferes with the work program of Mr. Fraider quite seriously. He also had a fracture of the jaw, the tip of his nose was almost severed, and he suffered a fracture of the septum. Surgery will yet be required to correct a resulting deformity of the nose. He was in several hospitals and was attended by many competent surgeons and physicians.

Mrs. Fraider suffered a fracture of the left hip and multiple fractures of the left ankle, a comminuted fracture of the left femur, a fracture of both bones of right leg below the knee, also fractures in the right foot. She also had a fractured jaw and her teeth were loosened in the sockets. She was confined in the hospital until Thanksgiving of 1946. Mrs. Fraider's limbs remained swollen still at the time of trial and at that time she was wearing an orthopedic shoe. As a consequence Mrs. Fraider is unable to walk on uneven surfaces; she cannot maintain her equilibrium when barefooted. She cannot walk over three or four blocks at a time. She cannot kneel, stoop or squat. Her actual expense thus far is in excess of $6,000 and there will be more expense entailed in future surgery.

At the outset of the trial there were several skirmishes between court and counsel which are interesting to consider and which are discussed at some length in appellants' brief. On the day this case was set for trial, Monday, February 16, 1948, defendant moved for a continuance because of the illness of Jennie Scott. This motion was supported by the affidavit of a doctor stating that Miss Scott was unable to be in attendance at her trial. Counsel for plaintiffs, in resisting the motion, outlined the injustice that such a continuance would enforce upon their clients, stating that there

were several groups of counsel representing defend-
ant; that previous settings were necessarily cancelled
because it was difficult to get all counsel ready at the
same time; that the trial of this case necessitated the
presence of many important and busy witnesses; and
that such witnesses had arranged their schedules, not
without great difficulty, to appear at the trial at this
particular time. The trial court said he would appoint
a disinterested physician to visit Miss Scott and make
a report on her state of ill-being, if any. And when
counsel refused this offer, the court offered to send
two doctors, but counsel for appellant said, ''I would
not agree if you sent a dozen.''

The motion for continuance was overruled and then
the question arose concerning the insufficiency of the
jury panel, which consisted of only twenty veniremen.
The court directed an inquiry to counsel if it would be
agreeable to draw additional jurors from the body of
the county or would they insist upon having them
drawn from the box in the regular way. Counsel for
appellant refused to agree either way saying in effect
that whatever their views might be on the subject, the
court would accord them slight consideration. The
trial was continued until the next day, giving the
sheriff time to serve the newly drawn jurors and com-
plete the panel. This gave Miss Scott an additional
day to recover her health.

█ █ On February 17, 1948, the Elgin Daily
Courier News in commenting on the trial said: ''The
trial of the case started yesterday. On account of Miss
Scott's illness, the defense sought a continuance but
was overruled.'' Many of the jurors in the panel lived
in Elgin. And on Thursday, February 19, after the
jury was selected and after counsel for appellee had
finished his opening statement, the following tran-
spired. Mr. Morgan, one of the counsel for appellant:
''If the court please, my client Jennie Scott is unable
to be present and I prefer to reserve my opening state-

ment." Mr. Streit, attorney for appellee: "Objection." Mr. Morgan: "I prefer to reserve my opening statement until later at such a time as she may be able to be here." This request was denied by the court. Counsel for appellant contend that the jury was prompted to decide the issues in the case unfavorably because they were led to believe that since Miss Scott was not present at the trial during the earlier stages, she was indifferent and that whatever might be the result was of little concern to her. On the other hand, appellee very appropriately replies that the foregoing speculation was outweighed by the reasonable conjecture that the jury might well have entertained the feeling that Miss Scott was arbitrarily forced into trial while she was sick, and that such unfair treatment unduly prejudiced her rights. Counsel for appellants overlooked no opportunity to inform the jury that the court and opposing counsel were insisting on their sick client proceeding with the trial. The court was exceedingly patient and displayed remarkable judicial poise in his dealing with appellant counsel. We are sure that the court did not err in overruling the motion for continuance or in denying appellant's counsel the right to delay making an opening statement to the jury.

Thereafter, counsel for appellee brought to the attention of the court the fact that they desired the presence of Miss Scott so that they might be permitted to examine her under section 60 of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060] and develop some of the essential parts of their proof. They brought to the attention of the court the fact that Miss Scott had been seen upon the streets of Elgin, February 18. One of the counsel for defendant stated that such was true, but that Miss Scott was in the downtown business district of Elgin for the purpose of seeing her doctors. However, it was promised that she would be present on the following day, and she did appear on Friday, February 20.

The testimony of witness Kuhn developed a circumstance that gave rise to the principal defense in the case and considerable attention is devoted to it in the briefs of both sides. Kuhn testified that immediately prior to the collision, he heard a report or a noise that might have sounded like a tire blowing out. This would, of course, tend to account for the defendant's car turning suddenly into the path of the Fraider car.

It is strange and significant that this explanation had never occurred to appellant until the very moment of Kuhn's testimony. The answer filed by defendants had nothing to say about such an occurrence. The defendants' counterclaims said nothing about a blowout. They were both under oath, and not only did the answers and counterclaims of the defendants fail to mention this important occurrence, but it was specifically alleged therein that the Fraider car was being driven on the wrong side of the highway and that the Scott car was on the right side. There was not a scintilla of proof to support those allegations. Consequently, this fortuitous development of the "blowout" theory played an important part in bolstering a weak defense. Immediately following the accident, Jennie Scott would most naturally be searching for some explanation of why Ethel Hannah turned the car onto the wrong side of the pavement. If the left rear tire on her car had blown out, and caused a loud report that could be heard two cars to her rear, being a passenger in the car, it seems that she would have heard the noise and simultaneously therewith felt the swerve of the car.

The proof showed that the left rear tire and the right rear tire of defendant car were flat, but that neither had any tear or hole in it. It is common knowledge that "blowouts" are attended by ragged tears in the casing and inner tube.

In view of the foregoing, the jury could justifiably conclude that there was no "blowout" in the left

rear tire that caused defendant car to swerve to the wrong side of the pavement. *Inter alia,* the jury could very properly have reached the conclusion that Ethel Hannah negligently managed the car after the "blowout," if any, occurred.

■ ■ Counsel for appellant complains that the court erred in admitting into evidence the answers and counterclaims of defendants. The absence of the "blowout" theory in either pleading is most unusual and is surely a circumstance proper for the jury to consider. Just what happened at the time of the accident was within the knowledge of Jennie Scott. Miss Scott never testified on the trial. She was a competent witness until an objection was interposed. (*Clarke v. Storchak,* 384 Ill. 564, 582; *Chicago Title & Trust Co. v. Sagola Lumber Co.,* 148 Ill. App. 333, 336; *Chicago Daily News v. Kohler,* 276 Ill. App. 87; *Lebanon Coal & Machine Ass'n v. Zerwick,* 77 Ill. App. 486, 489; *Standley v. Moss,* 114 Ill. App. 612, 615.)

■ The defendants objected to the testimony of Kenneth Fraider, and the court sustained the objection because Fraider was defending a counterclaim filed by the administrator of Ethel Hannah, deceased. The court later dismissed the counterclaim because it was not commenced within one year. The court still refused to permit Kenneth Fraider to testify. We believe this was error.

■ ■ Appellant also complains that the court erred in not giving a form of verdict where Jennie Scott alone could be found guilty. The only charge in the complaint which if proven would have made such an instruction appropriate is contained in paragraph 4 of the complaint. It alleged that defendant failed to provide for the necessary care of the Scott automobile and knowingly permitted it to be driven upon the highway in an unsafe condition. There was no proof to sustain this charge. If the defendant had made a motion specifically pointing out the failure of proof under

paragraph 4, it would have been allowed by the court. The other charges in the complaint were predicated upon the negligent operation of the car by Ethel Hannah and the consequent liability of Jennie Scott as a principal or a joint venturer. In such a case the master and servant are each liable for the negligent act of the servant. The servant is liable because he is the active tortfeasor, and the master is liable because of the doctrine of respondent superior. There being no proof to sustain paragraph 4, it was not error for the court to refuse an instruction wherein the jury could find Jennie Scott alone guilty.

█ Appellants complain of the giving of many of the instructions on behalf of appellees, and the refusing to give several instructions tendered by defendants. Counsel for both sides have exhaustively considered these assigned errors. We have carefully considered the arguments pro and con on this subject, and have reached the conclusion that there was no error committed by the trial court that would justify a reversal. The jury was fairly instructed. It is true that certain instructions which are the subject of criticism are not without imperfection, and it is extremely difficult for a trial court to select, modify, and correct a large group of instructions without incurring the risk that some reviewing court has held that the giving of several of the instructions is error, reversible or otherwise. For instance, the plaintiffs gave a rather long instruction defining the issues in the case. The giving of such an instruction has been both approved and criticized. If the plaintiff does not employ this method of advising the jury of the charges in the complaint, he must be very careful not to violate a rule that ofttimes appears in the decisions of this State. Namely, "it is reversible error to give instructions which refer the jury to the declaration or complaint to determine the issues in the case." (*Lerette v. Director General of Railroads,* 306 Ill. 348, 354; *Krieger v.*

*Aurora, E. & C. R. Co.,* 242 Ill. 544; *Stivers v. Black & Co.,* 315 Ill. App. 38, 42; *Kehr v. Snow & Palmer Co.,* 225 Ill. App. 403, 409; *Williams v. Stearns,* 256 Ill. App. 425, 431.)

█ In this connection it is well not to lose sight of the fact that plaintiff cannot recover on any charge of negligence except that contained in the complaint. (*Stivers v. Black & Co.,* 315 Ill. App. 38, 42; *Clare v. Bond County Gas Co.,* 267 Ill. App. 437, 441; *Brackett v. Builders Lumber Co. of Decatur,* 253 Ill. App. 107, 110, 112.) Add to the confusion and dangers that confront a trial lawyer in the preparation of instructions, the holding in the case of *Urban v. Pere Marquette R. Co.,* 266 Ill. App. 152. There the court said it was error to refuse an instruction offered by the defendant which limits the recovery to the negligence charged in the complaint. In the case of *Cooney v. Hughes,* 310 Ill. App. 371, the court had occasion to comment upon this problem:

''The Supreme Court in many cases has held it is error to give the complaint to the jury. *Johnson v. Pendergast,* 308 Ill. 255; *Lerette v. Director General of Railroads,* 306 Ill. 348; *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464. Other decisions criticize the practice of referring to the complaint in an instruction unless the jury are instructed as to what issues are raised by the complaint. *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464; *Tregoning v. Tregoning,* 262 Ill. App. 489; *Williams v. Stearns,* 256 Ill. App. 425. Other cases hold that it is the duty of the trial court to instruct the jury as to the issues. Some seem to approve the practice of defining the issues to the jury in the language of the declaration. *Central Ry. Co. v. Bannister,* 195 Ill. 48; *West Chicago St. R. Co. v. Liescrowitz,* 197 Ill. 607, 610. In yet another case the Supreme Court seems to have held it was error for the trial court to refuse instructions requested by a defendant which defined the issues raised in each count of the declaration and

in each instruction told the jury that unless the allegations were proved no recovery could be had. In *Krieger v. Aurora E. & C. R. Co.*, 242 Ill. 544, 548, the Supreme Court said:

'The rule adopted by nearly all courts is, that the Court must define the issues to the jury without referring them to the pleadings to ascertain what they are.' "

We are of the opinion that much confusion can be avoided if it be recognized that plaintiff and defendant are entitled to have the jury instructed briefly on the issues presented by the pleadings that are for their determination. In *Murphy v. King*, 284 Ill. App. 74, the court said:

"It is next contended that error was made in instructing the jury regarding the various counts in the declaration and in using the words of the declaration as contained in the various counts in the said instructions. We do not believe this was error. In fact, we think it proper practice to have the court define to the jury the issues made by the declarations and to do it by way of instructions."

Appellants also lodge an objection to plaintiffs' instructions defining the issues because it failed to mention the issues presented by defendants' counterclaims. The defendants in the trial of this cause did not pursue their rights under this counterclaim very seriously. If they desired the court to give an instruction upon that subject, it was their duty to tender such an instruction. The language employed in the case of *E. B. Conover & Co. v. Baltimore & O. S. W. R. Co.*, 212 Ill. App. 29, is appropriate.

"It is also argued that the court erred in not giving the jury some instructions for their guidance in assessing damages. It is the practice in this State for counsel for the respective parties to prepare such instructions pertinent to the issue as they desire given. If counsel for appellant had prepared and presented a

proper instruction, the court would undoubtedly have given it. We see no reason why counsel should criticize the court and opposing counsel for not doing what they might or should have done. The proposition advanced by them is novel, but we know of no authority requiring either the court or opposing counsel to prepare and give instructions as to the law of the case.''

We do not believe that there is any error in the record that would warrant a reversal. The plaintiffs are clearly entitled to recover damages from the defendants. It is inconceivable that the case could be tried again and again and a different result obtained. The judgments entered herein represent substantial justice. The ultimate goal of any court is not a mechanical perfection in trial technique, but a result that is fair and just, having in mind the law and evidence.

*Judgment affirmed.*