ROBERT WASSMANN, Indiv. and as Adm'r of the Estate of Robert C. Wassmann, Deceased, Plaintiff-Appellant, v. BETH A. RITCHASON, Defendant-Appellee.

Second District   No. 77-136

Opinion filed September 6, 1978.

Ronald L. Carpel, of Decatur, for appellant.

Brady, McQueen, Martin, Callahan & Collins, of Elgin, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:
Plaintiff, Robert Wassman, individually and as administrator of the

estate of his son, Robert C. Wassman, brought an action for wrongful death against defendant, Beth Ritchason. The suit arose as a result of a collision between decedent's car, driver by Craig DeHol in which decedent was a passenger, and the defendant's car. The trial resulted in a jury verdict in favor of the defendant and the plaintiff appeals.

The collision occurred at approximately 9:10 p.m. on July 12, 1974, at the intersection of Route 25 and Albert Drive, located in East Dundee, Illinois. At that location Route 25 is a four-lane, preferential highway, running north and south; Albert Drive is a two-lane road running east and west. Several witnesses testified at trial that Route 25 at that location is quite hilly and that these hills restrict one's ability to see northbound traffic while waiting at this intersection.

Defendant was called under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60) and testified that accompanied by her friend, Victoria Andriano, she was proceeding west on Albert Drive in a 1964 Buick Special. There is a stop sign for westbound traffic on Albert Drive at the intersection of Route 25; however, the stop sign is set back from the intersection. Defendant stopped at the stop sign and intending to make a left hand turn onto Route 25 pulled up until she could see clearly in both directions. She observed two cars, approximately two blocks away, heading north, and two cars, approximately three blocks away, heading south, one in the outside lane and one a little further away in the inside lane. Just before pulling out she looked north; then she started pulling out and looked to the south to determine if the northbound car in the outside lane was changing lanes. Then she looked to the north again and saw a red Ford Mustang 10 feet from her coming from the south. At this point her car completely occupied the innermost northbound lane of Route 25. After the impact, her car ended up in the outer northbound lane. Defendant further testified that she was going between 10 and 15 miles per hour when she first observed the Mustang; she did not know how fast the Mustang was traveling. She did not apply her brakes at any time while she was proceeding through the intersection; she did not know if the headlights of the Mustang were on.

George Cies, an Illinois State Trooper testified for plaintiff that he was detailed to investigate a collision at the intersection of Route 25 and Albert Drive. Trooper Cies had over 100 hours of training in accident investigations at the Police Academy as well as in-service training. Through the training he was educated in investigation and determination of skid marks at the scene of an occurrence. He had investigated 200 accidents. In response to plaintiff's questions, Trooper Cies testified that in his investigation of this occurrence he observed two sets of skid marks, one set belonging to the Buick running from the northwest to the southwest, measuring 12 feet, and a second set running north to south,

belonging to the Mustang; according to Cies, he did not recall measuring the second set of skid marks but that they seemed longer than the first set. He was of the opinion that the skid marks indicated braking prior to the point of impact. He was also asked and did indicate on plaintiff's exhibit No. 7, the point of impact of the two vehicles. Viewing the photographs of the scene, admitted into evidence, it would appear that the point of impact was in the inside northbound lane.

On cross-examination, Trooper Cies testified that on the basis of his investigation of the collision and his knowledge and experience, he was of the opinion that the Mustang was traveling at between 60 and 70 miles per hour at the time of impact. Counsel for defendant, Craig DeHol (later dismissed as a defendant), objected to the giving of Trooper Cies' opinion; the objection was overruled.

Craig DeHol testified for the plaintiff that he and the decedent had spent the afternoon together looking for someone to balance the new tires the decedent had purchased for his Mustang. Having accomplished this task, they returned to Craig's home in Carpentersville for supper, at which time Craig had two beers and the decedent had one beer. Next they went to a car wash in the decedent's car with the decedent driving; both later had an additional beer. Around 8 p.m. with Craig at the wheel of decedent's car, they drove around downtown Elgin looking for girls. After about an hour Craig proceeded to drive to the decedent's home; Craig's own car was there and the decedent had a television program he wanted to see. Craig remembered turning on the headlights on the Mustang because the lighting in downtown Elgin required them; decedent had also cautioned him about watching the speed limit as the oversized rear tires on the Mustang would cause the speedometer to read lower than it actually was.

Due to a concussion he received in the collision, Craig was unable to remember anything after passing a Burger King some distance from Route 25 until he woke up in the emergency room of the hospital. Craig also testified that he did not recall statements attributed to him by Trooper Cies that he always drove 20 miles over the speed limit and frequently drove with only parking lights. He explained that at the time he was in a state of shock having just seen the body of the decedent.

Thad Aycock from the Traffic Institute at Northwestern University testified for plaintiff. He trains police officers in motor vehicle accident investigation, and had particular expertise in headlight investigation. Aycock explained the elements of a headlight and how it can be determined whether one is on or not at the time of a collision. Regarding the Mustang, in January of 1975, he had gone to Erickson's Auto Sales and Parts and identified the car by the identification number he had been furnished with and removed the headlights. From the condition of the

right headlight Aycock concluded that it was on at the time of the collision; the left headlight had been damaged to such a degree that it would be impossible to form an opinion as to whether it was on at the time of the collision.

During cross-examination defendant's counsel showed Aycock defendant's exhibit No. 19—a photograph of the Mustang following the accident. While Aycock stated that it appeared to be the same car and the same damage, he stated that the right headlight in the photograph was gone instead of the left one as he had previously testified and that the left headlight appeared to have a good deal of the lamp remaining instead of the right one as he had observed earlier. He could not be sure from the photograph whether the lens was intact in the left lamp as shown by the photograph or whether the reflector remained. On the basis that there was insufficient evidence that the headlights were in the same condition when they were examined, as immediately following the collision, the trial court struck Aycock's testimony.

Debra Nepermann and Janice Schroeder occupied a car heading south on Route 25, in the inside lane, north of the intersection with Albert Drive. Debra, who was driving, testified that she observed defendant's car preparing to turn left into her lane, going south; that defendant's car posed no danger to her car; and that when defendant's car was almost into her lane a red Mustang came out of nowhere and struck defendant's car. Debra did not see any headlights on the Mustang; she did not know if the defendant's car had its lights on or not.

Janice Schroeder, a passenger in Debra's car, testified that she saw defendant's car in the middle of the two northbound lanes, not going too fast; she did not see the Mustang until right before impact; in her opinion the Mustang was going at least the speed limit. She did not see any lights on the Mustang.

Robert Brinkman testified for the defense that on the evening of the collision he was proceeding north on Route 25 at approximately 9 p.m. and had stopped for a red light at the intersection of Grant Drive and Route 25 approximately one mile from Albert Drive. As he pulled away from the stoplight, two cars pulled around him; one was a red Mustang and the other was a dark colored Camero or Firebird. Brinkman was traveling about 45 miles per hour at that time; he estimated the two cars to be going about 60 miles per hour. Once they pulled out in front of him they accelerated to about 90 miles per hour. He continued to watch the two cars until they went over a hill, approximately one-quarter mile from Albert Drive. As Brinkman came to the top of the hill he saw the Mustang that had gone around him flipped over on its side and another car off to the side of the road. On cross-examination, he testified that he did not

know whether the cars had headlights on, though he did observe that the taillights were on. On a prior deposition he had testified that as best he could recall both vehicles had their headlights on.

The first issue on appeal is whether the trial court erred in giving the following instructions over plaintiff's objection:

> "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts business, manages some affair, or does some service for the principal, with or without compensation. The agreement may be oral or written, express or implied.
>
> If you find that one person has the right to control the actions of another at a given time, you may find that the relation of principal and agent exists, even though the right to control may not have been exercised.
>
> If you find that Craig DeHol was the agent of the decedent Robert Wassmann at the time of the occurrence, then any act or omission of Craig DeHol at that time was in law the act or omission of the decedent Robert Wassmann.
>
> If you find that Craig DeHol was not acting as the agent of the decedent Robert Wassmann at the time of the occurrence, then the acts of Craig DeHol cannot be imputed to decedent Robert Wassmann."

■■ Under Illinois case law there are three ways in which a passenger in his own car can be contributorily negligent: (1) If the owner and driver are engaged in a joint enterprise and the driver is negligent; (2) if the driver was acting as an agent of the owner, the owner had a right to control his actions, and the driver was negligent; and (3) if the owner negligently failed to control the actions of the driver. *Palmer v. Miller* (1942), 380 Ill. 256, 43 N.E.2d 973.

■■ Plaintiff argues that the evidence presented is insufficient as a matter of law to find the decedent liable for the negligence of Craig DeHol based upon the doctrine of respondeat superior. However, proof of ownership of an automobile raises a presumption that the person operating the car is the agent of the owner and acting within the scope of his agency. (*Paulsen v. Cochfield* (1935), 278 Ill. App. 596.) Plaintiff has offered nothing to rebut this presumption. In addition there was testimony by Craig DeHol that he was returning to the decedent's home because the decedent wished to watch a television program, as well as to pick up his own car.

Further, the jury was instructed that if one person has the right to control the actions of another, the relation of principal and agent may be found to exist. In *Coakley v. Nichols* (1972), 8 Ill. App. 3d 973, 290 N.E.2d 315, this court stated:

> "It is well settled in Illinois that an owner of an automobile, while

riding as a passenger in it, not only retains the power and right to control its operation, unless that right has been abandoned or contracted away, but has the duty to control the driver. (*Palmer v. Miller*, 380 Ill. 256, 260; *Simaitis v. Thrash*, 25 Ill. App. 2d 340, 351.) The owner is thus under a duty to control the operation of the owned vehicle and is chargeable with his own negligence, not the negligence of the driver, in the performance of that duty. (*Scott v. Valentine*, 268 N.E. 2d 485, 487; *Staken v. Shanle*, 23 Ill. App. 2d 269, 279.) Nevertheless, to properly assess the performance of the owner passenger's duty to control the driver, the jury must obviously consider the operation of the driver as well." (8 Ill. App. 3d 973, 975, 290 N.E.2d 315, 317.)

It is clear from the instructions that it was up to the jury to determine whether there actually existed a principal and agent relation and whether the right to control had been abandoned or contracted away. On the basis of the presumption and the other evidence admitted at trial, there was sufficient evidence for the instructions to be given.

Plaintiff contends that the trial court erred in refusing plaintiff's tender of the following instruction:

"If you decide there is evidence tending to show that the decedent was a person of careful habits, you may infer that he was in the exercise of ordinary care for his own safety and for the safety of others at and before the time of the occurrence, unless the inference is overcome by believable evidence. In deciding the issue of the exercise of ordinary care by the decedent you may consider this inference and any other evidence upon the subject of decedent's care."

In Illinois evidence of careful habits is admissible only where there are no eyewitnesses to the accident. (*Hughes v. Wabash R.R. Co.* (1950), 342 Ill. App. 159, 95 N.E.2d 735.) Plaintiff points out that the notes to the instruction explain that the instruction is appropriate in wrongful death actions where there are no witnesses to the occurrence other than the defendant, concerning the entire period in which the decedent must have been in the exercise of ordinary care. Plaintiff argues that the only person who had an opportunity to observe this "entire period" was Craig DeHol who was unable to testify about the entire period due to a concussion and consequent loss of memory.

■■ We disagree with plaintiff's contention. In the present case there were several eyewitnesses. Defendant and her passenger, Victoria Andriano, both testified as to the collision; Janice Schroeder and Debra Nepermann also gave eyewitness accounts of the collision. Further there was the testimony of Robert Brinkman concerning the speed of the Mustang as it proceeded north on Route 25 and as it went over the hill one-quarter

mile from the point of impact. Thus there was eyewitness testimony covering the movement of the Mustang both prior to and at the time of impact. Therefore, we hold that the trial court properly refused the tendered instruction.

Next, plaintiff contends that the trial court erred in allowing Trooper Cies to give his opinion as an expert as to the speed of the Mustang at the point of impact. Plaintiff argues that there was competent evidence of the speed of the Mustang at impact given by Janice Schroeder, thus making Cies' opinion unnecessary. Further, that Cies based his opinion merely on the damage done to the vehicles and the distance they were found from the point of impact; that he had not received any special training on estimating speeds prior to collisions, other than attending movies on the subject; and his failure to measure one set of skid marks renders the data on which he based his opinion insufficient.

Plaintiff relies on *Deaver v. Hickox* (1967), 81 Ill. App. 2d 79, 224 N.E.2d 468. In that case, the trial court allowed an investigating officer to testify as to his estimate of the speed of a vehicle involved in an accident therein from the skid marks, based upon his experience as a police officer for eight years, training at the police academy and courses at Northwestern University. The reviewing court in determining that the officer's testimony was inadmissible, held that the court should at a minimum determine that the witness possesses special skills necessary to cope with the factors of determination involved, and second, that he actually employed those factors prior to permitting the opinion to be given to the jury. The reviewing court noted that in a colloquy with the trial court the officer largely abandoned the use of any training and education upon computing the speed, but expressed reliance on his investigation of accidents over his eight years of police service. Nor did the record show whether such investigations referred to, included any tests or computations or other such determinations of speed of vehicles based upon physical damage.

In deciding the issue as to Cies' opinion of speed, we note first that he was called by plaintiff, and that it was plaintiff who sought to have him qualify as an expert in the field of accident investigation. On direct examination, plaintiff solicited Cies' opinion as to which skid marks were formed by which vehicle; as to whether the skid marks were formed by braking or otherwise; and as to the point of impact.

■■ However, more important, we observe that plaintiff did not object to the question soliciting Cies' opinion on the speed of the Mustang at impact; rather it was counsel for defendant DeHol who objected; nor did plaintiff adopt the objection of DeHol's counsel. Therefore, plaintiff has failed to preserve his objection to this testimony.

Were we to hold that the objection was properly preserved, we would

be inclined to follow the decision in *Deaver v. Hickox*. However, in the case before us there was, in addition to Cies' testimony, the testimony of Janice Schroeder, an eyewitness to the collision, that the Mustang was going at least the speed limit at the point of impact. There was also the testimony of Robert Brinkman who observed the Mustang traveling at approximately 90 miles per hour just a quarter of a mile from the site of the collision. Under these facts, the admission of Cies' opinion as to the speed of the Mustang at the point of impact is at most harmless error.

■■ Plaintiff contends that the trial court committed error in striking the testimony of plaintiff's expert witness, Thad Aycock. In light of Aycock's testimony on both direct and cross-examination, the substance of which we have set out above, the trial court properly struck Aycock's testimony.

■■ Next, plaintiff contends that the testimony of Robert Brinkman regarding the speed of the Mustang prior to the collision should not have been admitted as it was too remote from the actual point of impact. Brinkman lost sight of the Mustang and the other vehicle as they went over a hill, approximately one-quarter mile from Albert Drive, the site of the collision.

In *Klavine v. Hair* (1975), 29 Ill. App. 3d 483, 331 N.E.2d 355, the court observed that early Illinois cases took the view that evidence as to a party's conduct at any time before the occurrence itself, may have been too remote and therefore inadmissible; however, the trend now is to admit such evidence on the particular facts of each case, if the relevance is apparent. The court then went on to hold that the testimony of a witness who saw a vehicle 900 yards from the site of the impact and observed it for 300 yards should have been admitted. Under the facts of this case we are of the opinion that the trial court properly admitted the testimony of Robert Brinkman.

Finally, plaintiff contends that he was unduly prejudiced by the consolidation of his action with that of Victoria Andriano against Craig DeHol. Prior to trial, counsel for plaintiff objected to the consolidation of the two cases on the basis that it did not allow him to utilize the Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2). The Act provides in pertinent part:

> "Section 2. In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party or person directly interested in the action shall be allowed to testify on his own behalf to any conversation with the deceased or incompetent person or to any event which took place in the presence of the deceased or incompetent person, except in the following instances:
>
> (1) If any person testifies on behalf of the representative to any conversation with the deceased or incompetent person or to any

event which took place in the presence of the deceased or incompetent person, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event."

While plaintiff concedes that he did call defendant under section 60, this testimony was offered only after plaintiff was denied the use of the Dead Man's Act by the consolidation.

■■ That plaintiff would not have called defendant as a witness in the absence of consolidation invites this court to speculate as to plaintiff's trial strategy. Also, plaintiff called Victoria Andriano as his own witness and as an eyewitness to the collision. Under the provisions of section 2(1) of the Act quoted above, this permitted defendant to testify.

We note as well that at the start of the second day of trial, plaintiff's counsel made a motion to sever the two cases, which motion was granted by the trial court. Defendant contends that if plaintiff thought that he was prejudiced by the consolidation he should have made a motion for a mistrial at that point. We agree with this reasoning.

Further, plaintiff alleges that following the severence of the two cases, Victoria Andriano and her attorney remained in the courtroom as spectators during the remainder of the trial; that the continued presence of these prior parties in the courtroom could only be interpreted by the jury to mean that she had settled her case by DeHol admitting liability.

■■ Victoria Andriano was called as a witness by plaintiff following the dismissal of her own suit. If her continued presence in the courtroom was throught to be prejudicial to his case, plaintiff should have made a motion to exclude her. In any event we will not speculate on what the jury may or may not have perceived by her continued presence in the courtroom, particularly in absence of a motion to exclude her.

The judgment of the circuit court of Kane County is hereby affirmed.

Affirmed.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.