CAREER OPPORTUNITIES INCORPORATED, Plaintiff and Counterdefendant, *v.* GRANT, WRIGHT & BAKER, INC., Defendant and Counterplaintiff-Appellant.—(GT CHEMICAL PRODUCTS, INC., Defendant and Counterdefendant-Appellee.)

First District (1st Division)    No. 79-1646

Opinion filed December 15, 1980.—Rehearing denied January 19, 1981.

Lee C. Korbakes, of Chicago, for appellant.

Del Preto & Seiden, of Chicago, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:
This is an appeal from the judgment of the circuit court of Cook

County in favor of the counterdefendant, GT Chemical Products, Incorporated (hereinafter called "GT"), with regard to the claim that GT has become delinquent in its account for advertising services and disbursements rendered in its behalf by counterplaintiff, Grant, Wright and Baker.

Plaintiff, Career Opportunities Incorporated's original complaint requested an injunction be issued and damages be awarded against both defendants, GT and Grant, Wright and Baker, alleging a conspiracy in appropriation of trade secrets.

GT is a principal competitor of Career Opportunities Incorporated (hereinafter called "Career Opportunities"), in the sale of vinyl repair kits. Grant, Wright and Baker, in an amended counterclaim, demanded approximately $73,000 from GT which had allegedly become delinquent in its account for ad services and disbursements. The original complaint was subsequently dismissed and the remaining counterclaim against GT was tried. Judgment against the counterplaintiff, Grant, Wright and Baker, was entered, from which this appeal is taken.

The issues presented for review are: (1) whether the judgment against Grant, Wright and Baker was contrary to the manifest weight of the evidence; and (2) whether the trial court erred in denying Grant, Wright and Baker's request to include certain exhibits in the record on appeal.

Prior to mid-November of 1977, Grant, Wright and Baker lost the $500,000 per year advertising account of their client, Career Opportunities. Mr. Fred Broitman, an employee of Grant, Wright and Baker, then attempted and finally obtained a partial replacement account, GT, which was in the same business as Career Opportunities.

On November 16 and 17, 1977, certain meetings took place between Gilbert Sellman of GT and Fred Broitman. At that time Mr. Sellman made a commitment on behalf of GT of $150,000 for an ad campaign for 1978, while implementation of the developing ad campaign remained subject to the prior approval of GT. This budget was to include an ad campaign as well as an analysis of the efficiency of GT's previous advertising.

Mr. Sellman testified that when the meeting of November 17 was concluded Mr. Broitman was furnished with copies of previously published GT ads, veloxes, negatives and other production materials indispensable to the publication of an advertisement. According to Mr. Sellman, Mr. Broitman left the meeting with these production materials.

In late November of 1977, GT received a publication schedule from Grant, Wright and Baker. This schedule set up an ad program, which was in excess of $150,000. Mr. Sellman testified that just after receiving this schedule he had a telephone conversation with Mr. Broitman, wherein he told Mr. Broitman not to place advertising as listed in the publication

schedule. Mr. Sellman also testified that as of December 5, 1977, no authorization had been given to Mr. Broitman to place any classified advertising or any advertising whatsoever, other than the takeover orders relating to placements of ads made prior to retaining Grant, Wright and Baker. Furthermore, Mr. Sellman testified that Mr. Broitman's ad analysis had not been received by that date.

Grant, Wright and Baker argues that Mr. Sellman misstated the truth when he testified that no production materials or copy were ever transmitted by GT to any publishers. At trial, Grant, Wright and Baker introduced a group exhibit which included numerous insertion orders from itself to various publishers, instructing the publishers that production materials, or copy, would be transmitted to them by GT. Grant, Wright and Baker also introduced as evidence a letter from Mr. Broitman to Mr. Kopit, of GT, which stated that copy will come from Mr. Kopit's office to the publishers. This letter is dated six days after the meeting from which Mr. Sellman claimed Mr. Broitman left with the GT production materials. In addition, Grant, Wright and Baker introduced into evidence numerous letters allegedly sent by Mr. Broitman to Mr. Sellman or Mr. Kopit referring to various ads Mr. Broitman intended to run in various national magazines, and explaining the print types and sizes of the ads. Many of these letters coincided with the insertion orders in the group exhibit. A few of these letters state that production materials would come from the GT office.

Grant, Wright and Baker concludes that because a number of the above-mentioned ads in fact ran in the various national magazines, then GT must have sent the copy to the publishers and, therefore, authorized such ads. However, in contradiction to the facts argued by Grant, Wright and Baker, GT's witnesses testified that: (1) Mr. Broitman took the GT production materials with him; (2) the insertion orders and the letters in evidence mistakenly indicated the copy would be forwarded by GT; and (3) no production materials were sent to any publishers by GT.

In addition, Grant, Wright and Baker argues that its books and records showed that GT owed it approximately $73,000, and that GT negotiated partial payments from time to time. However, GT contends these part payments were only paid with regard to ad expenses which it had authorized.

It appears the trial court believed GT's witnesses. In finding for GT, the trial court stated:

"* * * it really boiled down to the credibility of witnesses. One side told an opposite story from the other side, and it was a question of who the Court believed and what position appeared to be the most reasonable.

As I listened to the witnesses, the Court was of the impression

that GT Chemical had every intention of limiting the amounts of money that they spent for the year to the $150,000 figure. And it is this Court's opinion that the advertising agent * * * was over-zealous in placing ads and running up expenses that he attempted to have GT Chemical be responsible for * * *."

The law is well established in Illinois that a verdict based on conflicting evidence should not be disturbed on appeal unless it is contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident. (*Brayfield v. Johnson* (1965), 62 Ill. App. 2d 59, 210 N.E.2d 28; *Ritter v. Hatteburg* (1957), 14 Ill. App. 2d 548, 145 N.E.2d 119.) Manifest means clearly evident, clear, plain, indisputable. (*Schneiderman v. Interstate Transit Lines, Inc.* (1947), 331 Ill. App. 143, 72 N.E.2d 705.) Illinois law further favors the trier of fact as to issues involving credibility. The Illinois Supreme Court in *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626, held as follows:

"[E]specially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to obscure the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof."

In the case at bar, although the evidence is conflicting, the trial judge had a good opportunity to determine the credibility of the witnesses in weighing the evidence. Grant, Wright and Baker has simply failed to establish that GT authorized the expenditures in question.

Grant, Wright and Baker has additionally argued that certain of its exhibits should have been included in the record on appeal. At trial, it offered numerous exhibits into evidence during the direct examination of Mr. Kenner, with the court's response being, "I will rule on them subject to cross." Subsequent to the cross-examination of Mr. Kenner the exhibits were not re-offered into evidence.

Grant, Wright and Baker has not alleged, either on appeal or at trial, that it was prejudiced by the failure of the record to include the exhibits. In addition, it failed to re-offer the exhibits into evidence. Generally, an attorney has the burden of obtaining a ruling on all evidence offered. The trial court did not err in its determination of the contents of the record.

For the above and foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.