GEORGE J. ZELINSKI *et al.*, Plaintiffs-Appellants, v. SECURITY LUM-
BER COMPANY OF KANKAKEE *et al.*, Defendants-Appellees (Country
Village Homes, Inc., Third-Party Defendant).

Third District   No. 3—84—0556

Opinion filed June 10, 1985.

Michael D. Block and Michael N. Gorcowski, both of Block, Krockey, Cernugel & Cowgill, P.C., of Joliet, for appellants.

Russell H. Loverude, of Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiffs, George J. Zelinski and Michael Peters, appeal following a jury verdict for the defendants, Security Lumber Company and David Billadeau, at the conclusion of plaintiffs' suit for personal injuries in the circuit court of Will County. Country Village Homes, a third-party defendant and plaintiffs' employer, was dismissed on a directed verdict.

Plaintiffs present several issues for review, among which are (1) whether the defendant Billadeau was guilty of negligence as a matter of law; (2) whether the verdict of the jury was against the manifest weight of the evidence; (3) whether the trial court ruled correctly on certain objections to evidence; (4) whether the plaintiffs were denied the right to a fair trial by the introduction of certain evidence; (5) whether the cumulative effect of certain alleged errors committed during the course of trial was so prejudicial as to deny the plaintiffs a fair trial.

On April 20, 1981, plaintiffs were injured in an accident which occurred at Wilmington High School in Wilmington. Plaintiff Zelinski, age 46, was president of Country Village Homes, Inc., a general contracting firm specializing in remodeling homes and performing general construction and commercial work. As president of the company, Zelinski also undertook general carpentry work, supervisory work, overseeing of the project as well as performing general labor. He was and continues to be a 50/50 partner with his son in a business known as Wilmington Carpet Warehouse.

The plaintiff Michael Peters, age 25, was an employee of Country Village Homes, Inc., and working on the site performing general labor.

The defendant David Billadeau was employed by the defendant Security Lumber Company of Kankakee as a driver and warehouseman, a position he had held for approximately 12 years.

On the day of the incident, Security Lumber was to deliver certain

hollow metal doors, door frames and the accompanying hardware to the construction site at Wilmington High School. Defendant Billadeau was driving a Ford one-ton custom 350 truck with a stam gooseneck trailer. The overall length of the truck and trailer was approximately 43 feet.

After loading the foregoing materials on the truck, Billadeau drove to Zelinski's office, which was about 2½ blocks from Wilmington High School. After a brief meeting, Billadeau continued on to the high school, while Zelinski arrived at the jobsite in a separate vehicle. When Zelinski arrived at the school, he examined the delivery tickets and took out a set of shop drawings to find out where the doors and frames were to go. The parties met at the back of the school where deliveries were usually made. As the back door was too small for the door frames being delivered, Zelinski instructed Billadeau to drive around to the front of the building, which he did. Zelinski walked through the building and arranged for Michael Peters to help with unloading the truck.

According to Zelinski, Billadeau suggested that he back the trailer over a 7-inch curbing to the overhead doors, a distance of approximately 37 feet. Billadeau denied that he wanted to back the truck over the curb, since the total length of the truck and trailer exceeded the distance from the curb to the door by approximately 7 feet and the truck would be left hanging over the curb. Billadeau testified that the idea of going over the curb was entirely Zelinski's. Peters said he heard Zelinski tell Billadeau to drive over the curbing and did not hear Billadeau object to the instructions. In any event, it was Zelinski who decided that the 37-foot distance from the curb to the door was too far to carry the load, and he told Billadeau where he wanted to unload the trailer.

Zelinksi told Billadeau to drive his truck forward over the curbing. Billadeau responded by saying he would "give it a try." Billadeau backed up slightly and then proceeded forward at approximately 1 to 2 miles per hour and drove the front wheels of the truck over the curb with little difficulty, since the traction came from the rear wheels. However, when the rear wheels of the truck reached the curbing, they began spinning and would go no further. Billadeau got out of his truck, leaving the rear wheels against the curb.

Zelinski said he would get a 4 x 4 (Zelinski claimed he got a 2 x 10), but in any event the board was approximately 12 feet long and it was placed against the curbing as a step-up device. Billadeau claimed he didn't think it would work because the angle of the blacktop slanted back slightly.

On this second attempt to clear the curb the rear wheels caused the

board to spin out and away from the curb. Billadeau believed the board was thrown back approximately 2 to 3 feet. Zelinski was standing off to the side of the truck about 4½ feet away, according to Billadeau. Zelinski claimed that he and Peters each had a foot on the board to hold it in place and admitted that despite their effort, the rear wheels of Billadeau's truck caused the board to spin out and away from the curb.

Zelinski left for a few minutes and returned with a 4 x 4 which he claimed he placed on top of the 2 x 10, and told Billadeau they would hold the board in place with their feet. Zelinski then instructed Billadeau to try it again. Billadeau claimed that he was ordered to do so over his objections, *i.e.,* that Zelinski was running the job and that everything would be all right. Zelinski allegedly said that it was not Billadeau's worry, but his own. Billadeau claimed that he suggested taking the truck and trailer back to where he had originally parked and unload it from there but that Zelinski refused to allow him to do so.

Billadeau claimed he told Zelinski that the curbing was too high and that holding the board with his foot could result in somebody getting hurt. Billadeau indicated, however, that it was the industry custom for the driver to take orders from the general contractor.

Zelinski instructed Billadeau to "try it again." Zelinski held the boards in place with one foot on the driver's side of the vehicle while Peters held the board in place with one foot on the passenger side.

Billadeau moved forward in the first or granny gear at 2 to 3 miles per hour. When the rear wheels reached the curb they began to spin and Zelinski said, "Give it a little more gas and it should make it." Billadeau, following Zelinski's instructions, did as he was told and within a second or two he heard Zelinski yell. Billadeau put his foot on the clutch and brake, not knowing whether Zelinski wanted him to stop or not. Zelinski told Billadeau to let the truck roll back, which he did. Billadeau realized that Zelinski must have caught his foot under the 4 x 4.

The rear wheels of the truck did not at any time go over the curb. Both Zelinski and Peters were transported to a hospital, where Zelinski was treated for a broken left foot.

Dr. Edmund T. Dorner, associate professor of safety at Illinois State University, testified as an expert witness for the plaintiffs that it was not a safe practice for a person to hold lumber in place with his foot when a truck is driving over it.

Gary Butler, a building contractor and inspector, testified that it was a general custom and practice in the construction trade that the job superintendent at a construction site direct where he wants a deliv-

ery truck unloaded and that it is also his responsibility to provide proper ramps or step-ups if he directs a delivery truck to cross a curb. According to Butler, the proper step-up to cross a 6- to 7-inch curbing was to lay down 2-inch dunnage to prevent the lumber from sliding out. Butler further agreed with plaintiffs' safety expert that it was dangerous for any worker to try to hold lumber being used as a step-up device by using his feet.

Plaintiffs' initial contention is that the trial court erred when it failed to grant their motion for a directed verdict on the issue of liability.

■ Plaintiffs concede that a directed verdict is proper only when all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) When this generally recognized standard is applied to the facts of the ·instant case, it is clear that the trial court properly denied plaintiffs' motion for a directed verdict on the issue of liability.

Without restating the facts, it is apparent that the trial court believed, and with good cause, that questions of due care and proximate cause were appropriately left to the trier of fact.

■ Next, the plaintiffs contend the jury verdict was against the manifest weight of the evidence. We disagree. A court of review will not disturb the findings of a jury unless it is able to say that there is no evidence which fairly tends to support the verdict. *Cora v. Chicago Housing Authority* (1971), 131 Ill. App. 2d 23, 268 N.E.2d 497; *Buer v. Hamilton* (1964), 48 Ill. App. 2d 171, 199 N.E.2d 256; *Career Opportunities, Inc. v. Grant, Wright & Baker, Inc.* (1980), 91 Ill. App. 3d 984, 415 N.E.2d 463.

Such factors as conflicts in the evidence, controverted facts, and the demeanor or credibility of the witnesses are properly for the jury, and not us, to consider. *Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415; *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825; *Rizzo v. Emmons* (1975), 28 Ill. App. 3d 669, 329 N.E.2d 358.

Likewise, questions of negligence, breach of duty and proximate cause are preeminently questions of fact for a jury's determination which can be set aside only when a reviewing court is clearly satisfied that the verdict is unwarranted by the evidence. *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836.

The jury here could well have concluded from the evidence that the sole proximate causes of the injurious occurrence were the plaintiffs'

own voluntary acts of negligence in placing their feet in harm's way. (*Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208, 450 N.E.2d 363.) The record indicates that the jury deliberations took only 67 minutes. Apparently the decision in favor of the defendants was not as difficult a conclusion to reach as the plaintiffs would have this court believe. In any event, it certainly was not against the manifest weight of the evidence.

■ Another allegation of error concerns the trial court's refusal to grant plaintiffs a new trial.

Plaintiffs contend they are entitled to a new trial because the defendants' attorney told the jury in his opening statement that it was plaintiffs' burden to prove all the points in their complaint. Defendants' attorney further stated that the plaintiffs must prove the defendants placed the boards against the curb.

While plaintiffs are correct that the proper purpose of an opening statement is to state to the jury what facts the parties intend to prove and not to instruct the jury as to questions of law (*Geiselman v. Strubhar* (1939), 302 Ill. App. 23, 23 N.E.2d 383), their argument overlooks the fact that the trial court admonished the jury both prior to opening statements and subsequent to the presentation of evidence that the remarks of counsel are not evidence and that the jury should disregard any statement, argument or remark which was not based upon the evidence.

In matters involving arguments or remarks of counsel, the question of the prejudicial impact, if any, upon a jury is within the sound discretion of the trial court and will not be disturbed on review unless there has been a clear abuse of discretion. (*Sawicki v. Kim* (1983), 112 Ill. App. 3d 641, 445 N.E.2d 63.) While the remarks complained of were unnecessary, it is difficult to imagine how such isolated statements in a 700-page record influenced or inflamed the jury to the extent that the plaintiffs were deprived of a fair trial. *Hooper v. Mizyad* (1981), 98 Ill. App. 3d 768, 424 N.E.2d 851.

■ Next, the plaintiffs contend that defendants' cross-examination of Zelinski's treating physician regarding possible "secondary gains" was improper without a proper foundation. Plaintiff admits, however, that he raised no objection to such a line of inquiry.

Defendants point out that Dr. Greenwald's medical record indicated "? 2 gain?" Dr. Greenwald explained that he himself questioned whether Zelinski was complaining excessively for reasons unrelated to relief of pain and whether Zelinski's subjective complaints of pain were consistent with his objective medical findings.

Plaintiffs' counsel rehabilitated his witness on redirect examina-

tion, when he established that Dr. Greenwald never again questioned the existence of possible secondary gains and that to do so would be pure conjecture.

Initially, we must observe that the plaintiff waived any error in the question by his failure to object at trial (*Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 424 N.E.2d 1279), and that an issue not raised in the trial court cannot normally be raised for the first time on appeal. *Fullerton v. Robson* (1978), 61 Ill. App. 3d 93, 377 N.E.2d 1044.

Putting the problem of waiver aside, we believe that the cross-examination of plaintiff's treating physician was proper within fair and reasonable limits. (*Green v. Keenan* (1956), 10 Ill. App. 2d 53, 134 N.E.2d 115.) If plaintiff's own physician had raised the issue of possible "secondary gains," it was not improper of defense counsel to at least inquire about the subject. In fact, the inquiry seems to have backfired, since plaintiff's counsel did an excellent job of rehabilitating his witness on redirect.

Wide latitude has always been given attorneys in their cross-examination of experts to test their opinions. (*Montefelice v. Terminal R.R. Association* (1981), 100 Ill. App. 3d 858, 427 N.E.2d 370.) We see no reason to deviate from such a long-standing tradition here.

Plaintiffs' reliance on cases where courts of review have condemned trials by insinuation and innuendo rather than proof are clearly distinguishable to the facts of the instant case.

■ The next assignment of error concerns an alleged violation of an order *in limine* which provided:

> "All attorneys of record, and their agents, witnesses, parties, servants, and employees, are barred and enjoined under penalty of contempt and/or mistrial from referring or alluding to either directly or indirectly testimony or suggestion of any of the profits or tax returns of Plaintiffs or any of his businesses or any records relating to the same."

Despite the foregoing provisions, Zelinski contends that defense counsel was permitted over his objection to repeatedly inquire as to the status of his businesses and to establish that these businesses were expanding and thriving to a point in excess of $1 million. Armed with this information, plaintiff argues that the jury could easily calculate the profitability of his businesses.

Defendants respond by pointing out that plaintiff's initial complaint sought to recover lost wages or earnings, with no corresponding claim for impaired earning capacity and that defendants' subsequent discovery revealed that plaintiff had grossly misrepresented his claimed wage loss to such an extent that plaintiff was forced to attempt to amend his

complaint on the eve of trial to delete any reference to lost wages or earnings and to substitute, instead, a claim for impairment of earning capacity. When plaintiff's attempt to amend his complaint failed, he promptly and voluntarily nonsuited his original cause of action and refiled the instant complaint four days later.

On the day finally set for trial, plaintiff presented his motion *in limine*, and after two days of hearings and rehearings, the trial court reluctantly granted plaintiff's motion, believing that it was bound by other appellate decisions outside this district which precluded inquiry into the matter sought to be protected, despite their adverse effect on defense theories to the contrary. See *Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14; 114 Ill. App. 3d 720, 449 N.E.2d 250.

The court in *Robinson* held that an assessment of "earnings before and after the injury may be helpful to a jury in its determination of the impairment of ability to earn." (*Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 726, 449 N.E.2d 250, 254.) However, the *Robinson* court acknowledged that where an injured person is self-employed, a jury may consider only the "profits which have been derived from plaintiff's *management of or activity in a business,* as distinguished from profits from invested capital." (Emphasis added.) *Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 726, 449 N.E.2d 250, 255.

In applying the *Robinson* rules to the case at bar, defendants contend Zelinski "predominately earned income from his intellectual and physical labor, *** [that] most of his time was spent working in the field and that his primary responsibilities were physical labor and supervisory work."

The defendants conclude their argument by contending that the trial court therefore "improperly entered its Order in Limine in view of the predominately personal factor of plaintiff Zelinski's activities."

Plaintiffs are correct that generally speaking, earnings derived from a *combination* of labor and capital are not to be considered in determining the diminution of earning capacity. *Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 726, 449 N.E.2d 250, 254.

At the same time, our courts have not condoned overly broad orders *in limine* which unduly restrict defense counsel from presenting its defense. *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825; *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.

It appears that despite the provisions of the order *in limine* to the contrary, the trial court permitted defense counsel to inquire as to the

plaintiff's earnings, *i.e.,* that Country Village Homes, Inc., was doing $1 million in construction activity and had six to eight homes plus two eight-unit apartment buildings under construction.

The defendants claim they had as much right to present evidence to support their theory of the case to prove that Zelinski's claim of impaired earning capacity was just as exaggerated as his prior claim of lost wages or earnings. They argue that to hold to the contrary not only obscures the search for the truth but comes close to perpetrating a fraud on the court.

The trial court's reluctance to grant the plaintiff's motion *in limine* is not only understandable, but commendable. We share the same reservations about any device which frustrates a legitimate search for and presentation of the truth, for without hearing both sides, the chances of the trier of fact reaching a decision based upon misinformation are, in our opinion, greatly enhanced. The order *in limine* was overly broad and restrictive in that it clearly prevented the defense from inquiring into plaintiff's actual earnings from his businesses when such information was relevant and material to his (plaintiff's) claim of impaired earning capacity.

We conclude therefore that the order *in limine* was violated but that the violation, while technically an error, did not amount to reversible error because, first, the order was too restrictive in its scope, *i.e.,* the measure of damages for impairment of earning capacity is the difference between the amount which plaintiff was capable of earning before his injury and that which he is capable of earning thereafter (damages should be estimated on injured person's ability to earn money rather than what he actually earned before the injury) (*Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 727, 449 N.E.2d 250, 255), and, secondly, to hold otherwise would effectively preclude a valid defense attempt which sought to challenge plaintiff's claim of impaired earning capacity.

■ Next the plaintiffs contend the trial court erred in sustaining defense objections to their attempt to impeach the defendant and a defense witness.

The defendant, Billadeau, had testified that he believed he had no final authority as to whether or not to drive the truck over the curbing. Plaintiffs' attempt at impeachment consisted of pointing out that Billadeau had stated in a deposition that he would "give it a try before he forgot about it." An objection to the attempted impeachment was sustained.

Later Billadeau testified that he told Zelinski to use a step-up device employing only 2-inch materials. Plaintiffs again tried to impeach

Billadeau with a statement that he had said nothing to Zelinski after the 2 x 4 had been used and spun out. Again, plaintiffs' attempted impeachment was unsuccessful.

Finally, plaintiffs tried to impeach Gary Butler's prior testimony that additional materials used in the step-up device created no risk where previously he had answered that he had no opinion. Defendants respond by claiming the plaintiff waived the alleged errors by failing to specifically enumerate them in his post-trial motion. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Defendants further contend that plaintiffs failed to preserve the alleged errors by a proper offer of proof. *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533.

Setting aside the defendants' procedural objections, we believe that when plaintiffs' attempts at impeachment are viewed in the context of the testimony as a whole, no reversible error occurred in the denial of the attempted impeachment.

In order for a prior statement of a witness to be proved for the purpose of impeachment, it must be materially inconsistent with his testimony. (*People v. Davis* (1982), 106 Ill. App. 3d 260, 435 N.E.2d 838.) The inconsistency must be substantial and not merely trivial or collateral. *People v. Hayes* (1975), 32 Ill. App. 3d 953, 337 N.E.2d 280.

Our review of the record indicates that plaintiffs' counsel was given sufficient latitude in conducting his cross-examination of the defense witnesses and there was no clear abuse of discretion which resulted in manifest prejudice to plaintiffs' right to a fair trial.

The plaintiffs further contend that error was committed when the trial court refused to admit into evidence a discovery deposition of a subpoenaed witness who failed to appear.

Since reading a discovery deposition to a jury is not permitted, the trial court committed no error in excluding the document from the jury's consideration. *Strope v. Chicago Transit Authority* (1979), 71 Ill. App. 3d 987, 389 N.E.2d 1374.

Plaintiffs argue that this court should adopt Federal Rule of Civil Procedure 32, subsection 8(e), despite the fact that an appellate court lacks the requisite authority to adopt new rules or amend present rules of the Illinois Supreme Court. *People v. Krison* (1978), 63 Ill. App. 3d 531, 380 N.E.2d 449.

Plaintiffs' argument that the witness' failure to appear and testify amounted to prejudicial surprise is eroded by plaintiffs' counsel's statement that the individual was not an indispensable witness and that his testimony would be repetitive. The plaintiffs' failure to seek a continuance as a result of the alleged surprise negates the claim of error. *Peo-*

*ple v. Nelson* (1980), 92 Ill. App. 3d 35, 415 N.E.2d 688.

■ Next the plaintiffs claim that the trial court's refusal to allow a 12-inch ruler into the jury room constituted an abuse of discretion. Defendants argue that such an exhibit would have given the jury the questionable opportunity to conduct measurements or other experiments of their own devising in the jury room without a proper basis from the evidence. *Main v. Ballymore Co.* (1983), 116 Ill. App. 3d 1040, 449 N.E.2d 169.

Certainly the trial court has considerable discretion as to what exhibits may be taken into the jury room. (*Kaspar v. Clinton-Jackson Corp.* (1969), 118 Ill. App. 2d 364, 254 N.E.2d 826.) Some exhibits may tend to confuse rather than assist the jury in reaching a decision. Obviously a sound verdict is one which is based upon the evidence, admitted during the trial of the case, and not upon the results of extrinsic experiments conducted in a jury room which have little or no relationship to the issues to be resolved by the trier of fact.

■ Plaintiffs further contend that they were denied a fair trial by virtue of the fact that plaintiffs' employer, Country Village Homes, was named as a third-party defendant. However, the plaintiffs failed to object to the filing of the third-party complaint, and therefore the issue cannot be raised for the first time on appeal. *Ingram v. License Appeal Com.* (1971), 131 Ill. App. 2d 218, 268 N.E.2d 469.

■ Finally, plaintiffs contend that the cumulative effect of the alleged errors committed, if not individually sufficient to constitute reversible error, when considered together amount to a denial of a fair trial.

Plaintiffs acknowledge that no litigant is assured a perfect trial, but that he must be given a fair trial. (*Andres v. Lauer* (1980), 80 Ill. App. 3d 411, 399 N.E.2d 990.) The question before this court is whether, taken as a whole, the record indicates that the plaintiffs received a fair and just trial of their grievances. (*Fraider v. Hannah* (1949), 338 Ill. App. 440, 87 N.E.2d 795.) Our review of the proceedings indicates they did, and if the plaintiffs felt otherwise, they should have moved for a mistrial. *Wassmann v. Ritchason* (1978), 63 Ill. App. 3d 770, 380 N.E.2d 1022.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.